### L. W. BATCHELOR, Adm'r. *vs.* L. G. MACON *et al.*

A purchaser of land is never required to accept a doubtful title. He is not required to do so, although the fullest indemnity by way of general warranty may be tendered.

When an action is brought by an Administrator against the obligors of a bond, to recover the purchase money for a tract of land, and it appears from the pleadings that there is *a question* as to the title of the land not "free from doubt," and that the "right cannot be administered" without having the heirs at law and all parties in interest before the Court, the case, under the present system, will be remanded, with a view of making proper parties.

CIVIL ACTION, tried before *Clarke, J.*, at Spring Term, 1871 of the Superior Court of HALIFAX.

The record shows that an action was commenced by the plaintiff against the defendant on the 31st day of March, 1871. At Spring Term, 1871, this entry is made on the appearance docket: "Case for Supreme Court, whereupon the plaintiff executes his appeal bond, &c., which is accepted, and is herewith sent up, &c."

The following statement, as a case agreed, is filed with the transcript, viz: This was an action for the recovery of two notes, given by the defendants to the plaintiff, for the sum of $1,854.50, with interest from the 2d day of February, 1870. The notes were given for the purchase of a tract of land sold by the plaintiff, as administrator of John Faulcon, deceased, under proceedings for that purpose, which are admitted to be regular.

The defendant alleged that the said John Faulcon had no title to the said lands, and objected to paying the notes for that reason, and in support of this allegation he showed the will of Mrs. B. Faulcon, by which the land was devised to said John Faulcon. The following is a copy of so much of the will as is material to the case:

"Item 4th. I will and bequeath to my beloved son John Faulcon, all my lands lying west and north of Smiley's branch, except the Winters tract, and that part of the Atkins tract given to the children of C. B. Allen. Also, one-half of my negro slaves that I may die possessed of, together with those now in his possession (except those loaned to my grand-daughter, Ann P. Allen, in this will) to him and his heirs forever. But should my son John Faulcon die without lawful issue, then, and in that case, it is my request, inasmuch as it was his father's wish, that the above given legacy be by him conveyed by will in writing to his brother, Isaac N. Faulcon, or to any one or more of my grand-children."

It is admitted that the land devised by the testatrix in the foregoing clause of her will, to the said John Faulcon, was the same which was sold by the plaintiff, as administrator of the said John Faulcon, and purchased by the defendants, and for which the said two notes were given.

It is further admitted, that the said John Faulcon died intestate and without issue, leaving him surviving the said Isaac N. Faulcon and five or six grand-children of the said testatrix.

It is thereupon agreed between the said parties, that if the said John Faulcon did not acquire an estate in fee simple in the said land under the said will, then judgment shall be rendered for the defendant. But if the said John Faulcon did acquire an estate in fee simple under the said will, then judgment shall be rendered in favor of the plaintiff for the amount of said notes and interest."

Upon this case agreed is rendered the following judgment, by his Honor W. J. Clarke:

"Upon consideration of the foregoing *case agreed* I am of opinion that John Faulcon, deceased, did not, under and by virtue of the will of Mrs. Faulcon, acquire an estate in fee in the land in the pleadings referred to."

*Batchelor* and *Moore & Gatling*, for the plaintiff.

BATCHELOR, ADM'R. *v.* MACON *et al*

*Badger* and *Devereux*, for the defendants.

PEARSON, C. J. A purchaser is never ·compelled ·to pay up the purchase money and to accept a ·doubtful title ; he is not required to do so, although the fullest indemnity by way of general warranty be tendered.

Upon the opening of the argument it seemed clear that, on the case agreed, the questions growing ·out ·of the construction of Mrs. Faulcon's will were worthy of serious consideration, and that the validity of the title, which the plaintiff offers to make to the defendant, based upon the assumption that his intestate was seized of an absolute fee simple estate, is a question that cannot be considered as free of doubt. So it was evident that " the right could not be administered," unless the heirs-at-law of the intestate, and also all of the persons who may be embraced by the supposed contingent limitation, or contingent power of appointment, or contingent declaration of trust (which it may be termed), interested in the construction of the will of Mrs. Faulcon, were made parties to the proceeding. Under the old mode of procedure, the plaintiff would have taken judgment at law upon the two sale notes, whereupon the defendant would have filed his original bill in equity for a specific performance of the contract, if the vendor could make a good title. Otherwise, for its rescission, and in the meantime, for an injunction against an execution on the judgment at law, a reference, as of course, to enquire into the title, report the vendor cannot make a perfect title, ·decretal order, allowing the vendor six months in which to perfect his title by procuring releases, confirmation, &c. Final ·decree, " the contract is rescinded, &c., &c."

Under the C. C. P., all of these proceedings are had in one Court, and the legal conclusions from the facts set out in the case ·agreed must grow out of the equitable counter-claim set up by the defendant, which is, in plain English, "he don't

want to pay his money unless he gets a good title to the land; but is willing to pay up provided he gets a good title."

The facts set out in the case agreed do not put it in the power of the Court " to administer the right," for an adjudication of the question of title, as between the plaintiff and defendant, will not conclude the question in regard to the persons setting up claim under the will of Mrs. Faulcon. Under the old mode of procedure, the result would have been a rescission of the contract of sale; but in C. C. P., sec. 61, " the right can be administered " under the power to make any person a party, who is a necessary party to a complete determination of the question involved in the controversy. To this end the persons above referred to are necessary parties, in order to make the judgment conclusive in respect to all of the parties having an interest or claim in respect to the subject of controversy. One of the recommendations of the new Code is, that it supplies this desideratum in the old mode of procedure, and enables the Court *in one action* to settle the whole question and put an end to the litigation.

The case will be remanded, to the end that new parties may be made, and the costs of this appeal will abide the result of the action.

It may be observed, that this case furnishes an illustration of the truth, that a knowledge of the old mode of procedure is necessary to a thorough understanding of C. C. P., and will explain why, applicants for licenses are required to study Chitty, Stephens, and Adams on equity. C. C. P. cannot be understood and practically applied without a knowledge of the old mode of procedure.

PER CURIAM.                          Cause remanded.