JOHN MILLER and others v. LEONARD FEEZOR and others.

*Judicial Sale—Purchaser—Title.*

1. The highest bidder at a judicial sale acquires no independent right, but is regarded as a preferred proposer.   Neither payment of the purchase money nor title to the property will be decreed until the sale is confirmed by the court.   And then, he will not be compelled to pay the price unless a good title can be made.

2. Where a slave was sold in 1863 under decree in partition proceedings and delivered to the purchaser, but no confirmation of the sale had before the emancipation in 1865; *Held*, in an action for the price that the title became extinct and the court will not enforce payment.   The plaintiff is only entitled to the hire from the day of sale to the date of emancipation.

(*Shields* v. *Allen*, 77 N. C., 375; *Batchelor* v. *Macon*, 67 N. C., 181; *Cox* v. *Jerman*, 6 Ired Eq., 526, cited and approved.)

MILLER *v* FEEZOR.

MOTION for Judgment in a proceeding heard at January Special Term, 1880, of DAVIDSON Superior Court, before *Schenck, J.*

Upon the facts set out in the opinion judgment was rendered against the defendant John H. Peebles, from which he appealed.

*Mr. J. M McCorkle,* for plaintiffs.

*Messrs. Clement, Bailey* and *Hinsdale & Devereux* for defendant.

ASHE, J. A petition was filed in the court of pleas and quarter sessions for the county of Davidson in 18..., by Miller and others against Feezor and others, as tenants in common for the sale of a number of negro slaves for the purpose of division. At May term, 1863, of said court the order was made for the sale as prayed for, and C. T. Lowe was appointed the commissioner to effect the sale; and he reported to the August term, 1863, that he had sold the slaves on the 6th day of June, 1863, on a credit of six months with interest from the day of sale, and had taken bonds with good security from the purchasers. Among the purchasers at the sale was John H. Peebles who bought a slave named Eliza, and at the price of eighteen hundred dollars and gave his sealed note for the same, with one Eli Perry as surety. The cause was continued until February term, 1864, and no further action taken therein until the fall term, 1871, of the superior court of Davidson county, when on motion it was ordered that the case be brought forward and reinstated on the docket of that court, and that the clerk of the court proceed to collect the remaining debts due for said slaves; and this order was renewed at fall term, 1871, with the modification that C. T. Lowe was ordered to collect the debts instead of the clerk. Next, a notice was

13

served on John H. Peebles and Eli Perry that a summary judgment would be moved for against them on the bond for eighteen hundred dollars at fall term, 1873, of said court. At the spring term, 1873, a complaint was filed by C. T. Lowe alleging the facts substantially as above stated and asking for judgment on the bond. The defendants answered setting up several defences, the most important of which to be considered was the failure to obtain title to the slave. Several issues were submitted to the jury, the findings on which it is unnecessary to consider in the view we take of the case. At the special term of the superior court held for the county of Davidson on the 5th day of January, 1880, judgment was rendered by His Honor against the defendants for two hundred and seventy-six dollars, with interest from the 7th day of August, 1872.

The question now presented is, was that judgment erroneous? The sale had by commissioner Lowe was a judicial sale, and until confirmed by the court conferred no right. Confirmation is the judicial sanction of the court; until then the bargain is incomplete. The highest bidder at such a sale acquires by the acceptance of his bid no independent right, but is regarded as a mere preferred proposer, until the confirmation of the sale by the court. In this respect it differs from the ordinary sale by one individual to another, for there the sale is complete as soon as the agreement is signed or the price paid and property delivered. But in judicial sales the purchaser is not considered as entitled to the benefit of his contract till the master's or commissioner's report of the purchaser's bidding is absolutely confirmed. Rorer on Judicial Sales, §§ 122, 124; *Williamson* v. *Bray*, 8 Howard, 496; *Chedress* v. *Hurst*, 2 Swann, (Tenn Rep.) 487.

In this case there has been no confirmation of the sale, unless the judgment rendered against the defendants in 1880, sixteen years after the sale, shall be so regarded or it shall be presumed after the lapse of so long a time. But

will the court, as in this case, exercising an equitable juris-
diction, confirm a sale so as to make a purchaser liable for
the price of property bid off by him at a sale had under its
direction and authority, when before such confirmation the
title to the property has entirely failed, and when the court
being the vendor is bound to see that the purchaser gets a
good title before he pays the price? The obligation is
stronger on the court than on an individual.

We are aware there is authority for holding that the pur-
chaser, in buying at a judicial sale, runs the risk of the title
and that the maxim of *caveat emptor* applies to him, but in
this state it is ruled otherwise.

In the case of *Shields* v. *Allen*, 77 N. C., 375, it is held that
"where a particular piece of land is sold under an order of
court, a good title is deemed to be offered, and a purchaser will
not be compelled to complete his purchase by payment of the
price if it appear that a good title cannot be made." This prin-
ciple has been established by several decisions in this state.
See *Batchelor* v. *Macon*, 67 N. C., 181, in which it was decided
"that a purchaser of land is never required to accept a
doubtful title. He is not required to do so, although the
fullest indemnity may be tendered." And in the case of
*Cox* v. *Jerman*, 6 Ired. Eq., 526, Chief Justice PEARSON uses
this language : "It is clearly against equity to compel the
purchaser to pay the price before he has obtained a title, and
when it may be he never will be able to get one." Besides
these there are numerous decisions of this court to the same
effect in suits brought for the specific performance of con-
tracts. It is true these are cases where land was the subject
of the contract of sale, but there can be no good reason as-
signed why the same principle should not apply to the sale
of personal property.

In our case the title to the slave, Eliza, became extinct by
her emancipation in 1865, at a time when the suit was still
depending and while the court had the absolute power to

confirm or set aside the sale at its discretion; for we think up to the time of the emancipation, the court had the power to exercise that discretion in this case, and this is a fair criterion for determining whether a confirmation of the sale should be presumed from the possession of the slave by the defendant, Peebles, and the lapse of time, for as long as the court could exercise that discretion, no confirmation can be presumed, for confirmation is the final consent of the court.

We do not put our decision upon the ground of want of consideration, but upon the ground that it was against equity and good conscience to compel the defendant Peebles to pay for property sold under the authority of a court when it is obviously impossible for him ever to obtain the title.

We are of opinion there was error, and while we reverse the judgment rendered in the superior court we hold that the plaintiff is entitled to recover the hire of the slave from the day of sale until the date of her emancipation, and that it should be submitted to a jury or to a referee to ascertain the value of her services.

Let this be certified to the superior court of Davidson county that further proceedings may be had in conformity to this opinion.

Error.                                                    Reversed.