This action was brought by the feme plaintiffs, who were the minor children of William Blount, deceased, and his heirs at law, and their husbands, and Alfred Roland as guardian of Penelope Blount, one of the minor children, a feme sole against Joseph Thompson, the guardian of said minor children and the defendant Berry Godwin for the purpose:
1. Of cancelling a deed made by R. S. French, Clerk and Master in Equity, in accordance with an order of the Court of Equity of Robeson county, which order the plaintiffs insist was not authorized by law;
2. To have the defendant Berry Godwin declared a trustee of the lands conveyed by said deed, for the benefit of the *Page 505 
plaintiffs and to take an account of the rents and profits of the same.
3. To have the said lands sold and the proceeds of the sale paid to the plaintiffs after paying to defendant Godwin the sum of one thousand two hundred and eighty-eight dollars and eighty-eight cents, the value of the Confederate money paid by him for said land, and for further relief.
The defendant, Thompson, filed no answer to the complaint.
All the facts necessary to an understanding of the case are stated in the report of Du Brutz Cutlar, to whom it was referred. The report is substantially as follows:
William Blount died intestate in the year 1857, leaving a large real and personal estate. Charity Blount, his widow, and the defendant Joseph Thompson, were appointed administrators upon his estate and entered upon their duties before the commencement of this action. Afterwards and before the commencement of this action the said Joseph Thompson was appointed by the proper Court, guardian of the minor children of William Blount, who were Winnifred, and the plaintiffs Susan R. Amanda M. and Penelope T. Blount, Winnifred having arrived at full age and intermarried with one William H. Graham, had jointly with her husband a full settlement with her guardian. Susan R., intermarried with Alfred Roland, the plaintiff. Amanda M. intermarried with Thomas A. Norment the plaintiff.
On the 13th of February, 1872, Joseph Thompson was removed from the guardianship of the said named Penelope, by an order of the Probate Court of Robeson county, and on the 13th day of the same month Alfred Rowland was appointed her guardian by the said Court.
Joseph Thompson, as guardian of the said Susan R. Amanda M. and Penelope S., and Charity Blount filed a petition at the Fall Term, 1857, of the Court of Equity of Robeson county to sell the land belonging to William Blount's estate. An order of said Court was obtained directing the Clerk and Master to sell the said land upon a credit of twelve months, *Page 506 
after due advertisement according to law and report to the next term. The Clerk and Master made report to the Spring Term, 1858, of a sale made by him, which sale was set aside and a resale ordered by the Court upon the terms that twelve months credit was to be given, and that he take bond with approved security from the purchaser and that he report to the next term. At the Fall Term, 1858, of the Court the Clerk and Master made report again, whereupon the Court made the following order:
In this case it appearing to the Court by the report of the Clerk and Master that the lands mentioned in the petition have several times been offered for sale at public auction on the terms mentioned in the order of sale, and no person appearing who was willing to bid such sum as the Clerk and Master deems a full and fair price for the said lands, and Berry Godwin having proposed in writing to give for the said lands in the petition mentioned, estimated to contain four thousand three hundred and seven acres, and whether the same contain the said quantity or less, the price of eighteen thousand dollars upon the following terms: At twelve months from the first day of January, 1859, without interest, and then at five equal annual instalments from the 1st day of January, 1860, which proposal of the said Berry Godwin, has been submitted to and approved by the Clerk and Master, it is therefore ordered, adjudged and decreed, that the Clerk and Master accept the said proposal, and that on the said Berry Godwin executing bonds with good and sufficient security, to be approved by Joseph Thompson as guardian, for said sums, payable at the time and in the proportion above mentioned, the Clerk and Master execute to him a deed conveying to him the said lands in fee simple, and that he be allowed two hundred dollars for his said sale and deed. It is further ordered that the Clerk and Master deliver to Joseph Thompson, guardian, all the moneys and bonds which he has received of the said Berry Godwin, one-third to be held by the said Joseph Thompson in trust for the said Charity Blount for life, paying her the interest *Page 507 
thereof annually, remainder to Winnifred Blount, Susan Blount, Amanda Blount and Penelope Blount, his wards, and that said Joseph Thompson hold the residue of said money and bonds in trust for his said wards, and that the said Clerk and Master take said Joseph Thompson's receipt.
The said Berry Godwin tendered to the Clerk and Master a note for eight thousand dollars, signed by C. B. Sanders and endorsed by said Godwin, which was received as cash, and in addition to the Sanders note paid a sum of money in cash, which together with the said note and interest thereon, in the aggregate amounted to $9,328, and for the residue of the purchase money gave his three notes, endorsed by Simon Godwin and Hinnant Faulk, as follows: One for twenty-six hundred and seventy-two dollars, due January 1st, 1863, and two for three thousand dollars each, due respectively January 1st, 1864, and January 1st, 1865. Said notes and cash were approved and accepted by said Joseph Thompson, turned over to him and his receipt for the same taken. At the time the Clerk and Master made title to Berry Godwin by deed dated 1st November, 1858, the Sanders note was paid. The three remaining notes, constituting the balance of the purchase money, were paid and taken up by the said Godwin in Confederate currency, on the 18th of April, 1863, except the sum of six hundred dollars, for which he gave his due bill, and paid the same in July, 1863. The principal and interest of said three notes on the 18th day of April, 1863, amounted to eleven thousand and six hundred dollars. The money was paid at the request of Thompson, who desired it to be paid, as he said, for the reason that he had a good opportunity of investing it. At the time of said payment Thompson was regarded generally as a prudent business man, and at that time Confederate money was generally received by prudent business men in Robeson county in payment of ante war debts. There was no evidence that any person in Robeson county, acting as guardian, received Confederate currency in payment of well secured ante war debts before due, and released securities, as *Page 508 
late as April, 1863. The value of eleven thousand dollars Confederate currency, paid on the 18th day of April, 1863, was three thousand six hundred and sixty-six dollars and sixty-six cents.
On the 25th day of November, 1872, divers actions were pending in the Superior Court of Robeson county, in which the plaintiffs in this action were plaintiffs and the defendant Joseph Thompson, and the sureties on his guardian bond, and others, were defendants, which actions are particularly specified in the compromise hereinafter mentioned. On the 25th day of November, 1872, the plaintiffs and the defendant Thompson, by their respective attorneys, who were thereunto specially authorized and empowered by the parties, entered into a written compromise of the said actions, a copy of which is hereto annexed. In the first, second and third actions in the compromise, the plaintiffs in this action sought to have from the defendant Thompson a settlement of his account as guardian of the plaintiffs, Susan, Amanda and Penelope, including his transactions with the defendant Godwin and his liability to them for the price of the land, sold under a decree of the Court of Equity and bought by Godwin as aforesaid, and to recover from him and his sureties whatever amount might be found due on taking the account. The seven hundred acres of the Willis P. Moore land, mentioned in the compromise, in article 6th, had been conveyed by Moore to the defendant Thompson, by deed dated 6th September, 1866, and by said Thompson conveyed to Needham J. Thompson in trust for Willis P. Moore's wife and children by deed dated 24th April, 1867. These conveyances were known to the plaintiffs at the time of making said compromise. The fourth action mentioned in said compromise was brought to set aside the conveyance to Needham J. Thompson and have a trust in said land declared in favor of the plaintiffs, on the ground that it had been purchased by the defendant Thompson, their guardian, with their money, and that Needham J. Thompson and *Page 509 
his cestuis que trusts were not purchasers for value and therefore stood in the shoes of their grantor, Joseph Thompson.
At the hearing it was admitted by the plaintiffs, and upon such admission I find the fact, that all the terms of the compromise were fully executed and performed by the defendant Thompson before the commencement of this action, with the exception hereinafter stated. Thompson had paid to the persons all the money therein agreed to be paid, had surrendered to the plaintiffs all the notes, bonds and all other credits held by him as guardian, had submitted to proper decrees in the said pending actions, with the exceptions hereinafter mentioned, and had put the plaintiffs in possession of all the lands mentioned in said compromise, except the seven hundred acres before mentioned.
The exceptions above mentioned, being the only points in which the plaintiffs contended that the said compromise had not been fully performed by Thompson, are as follows:
1. That no proper deed had been executed by defendant Thompson to plaintiffs for the seven hundred acres of the Willis P. Moore land.
2. That no decree had been made in the fourth action in the said compromise mentioned, that the seven hundred acres of land should be held by the defendant Thompson as guardian of and in trust for the plaintiffs, Susan, Amanda and Penelope.
Upon these points I find the following facts:
1. That defendant Thompson tendered to the plaintiffs, Alfred Rowland and Thomas A. Norment, a quit claim deed from himself to the plaintiffs, Susan, Amanda and Penelope, for the seven hundred acres of the Willis P. Moore land, which the said Rowland and Norment declined to accept in the absence of their attorney, and until their attorney should see it and advise that it was their duty to accept it, and that it was drawn in accordance with the compromise. The deed was accordingly left with Rowland for that purpose, and afterwards the plaintiffs' attorney, upon examination of said deed, advised that it was not drawn in accordance with the requirements *Page 510 
of the compromise, and it was returned to Joseph Thompson and no other deed was ever executed or tendered by Thompson. Said deed was drawn by Thompson's attorney without consultation or advice of the plaintiffs' attorney.
2. That no such decree as above mentioned was entered in the fourth action mentioned in the compromise.
Upon the foregoing facts I declare the following conclusions of law:
1. The defendant Thompson having filed no answer, the plaintiffs are entitled to judgment against him for want of an answer, that an account be taken to ascertain what is due from him to the plaintiffs, by reason of the matters stated in the complaint.
2. As to the first defence set up in the answer of the defendant Godwin, that the payments made by him in Confederate money, to the defendant Thompson, on the 18th day of April, 1863, were in law a satisfaction and extinguishment of the debt owed by him for the purchase of the land of the plaintiffs, that the plaintiffs have no right of action against the said Godwin, and that this action should be dismissed as to him, at the cost of the plaintiffs.
3. The conclusion of law last declared being decisive of the action as against the defendant, Godwin. I do not deem it important to declare any conclusion of law upon the facts stated in relation to the second defense set up in the answer of the defendant Godwin.
The following is a copy of the compromise hereinbefore referred to:
It is agreed between Alfred Rowland and wife, and Thomas A. Norment and wife, and Alfred Rowland as guardian of Penelope Blount, and David Townsend and wife, on the one side, and Joseph Thompson, guardian of Susan, wife of Alfred Rowland and Amanda, wife of Thomas Norment and for Penelope Blount, and the said Joseph Thompson trustee for Charity, wife of David Townsend, that the actions now pending in the county of Robeson: *Page 511 
1. Between Alfred Rowland and wife, against Joseph Thompson, for an account.
2. Thomas Norment and wife, against Joseph Thompson and others, on his guardian bond.
3. Penelope Blount, by her guardian Alfred Rowland, against Joseph Thompson, guardian and others, on his guardian bond.
4. Alfred Rowland and wife, Thomas Norment and wife, and Penelope Blount, by her guardian against Joseph Thompson, Needham J. Thompson and Willis P. Moore and wife, and others.
5. The same parties against Joseph Thompson and W. B. Thompson.
6. The same parties against Joseph Thompson and Moore T. Sealy.
7. David Townsend and wife, against Joseph Thompson, trustee, for wife of said David Townsend.
8. David Townsend against Joseph Thompson, guardian for Susan, Amanda and Penelope Blount.
(1.) That the said Joseph Thompson is indebted to Susan, wife of Alfred Rowland, in the sum of one thousand dollars.
(2.) To Amanda, wife of Thomas Norment, in the sum of one thousand dollars.
(3.) To Penelope Blount, in the sum of one thousand dollars.
(4.) To David Townsend and wife in full satisfaction of all claims against said Joseph Thompson as guardian and as trustee for the wife of the said David Townsend, in the sum of twenty-five hundred dollars.
(5.) That Joseph Thompson shall pay of the costs incurred and to be incurred in said actions, the sum of two hundred dollars to John W. Ellis as Commissioner for stating the account in the said actions of Alfred Rowland and wife against said Joseph Thompson, guardian.
(6.) That one undivided third of the tract of land known as the Shelby Bay land, the tract of land known as the Moore T. Seely tract, which was conveyed by Moore T. Seeley and wife *Page 512 
to Joseph Thompson, containing five hundred acres, and the tract of land known as the William B. Thompson land, which was conveyed by R. McMillan, sheriff, to said Joseph Thompson, containing about seven hundred acres, and the Willis P. Moore land, which was conveyed by Willis P. Moore to said Joseph Thompson, containing seven hundred acres (and it is expressly agreed that that tract heretofore conveyed by said Joseph Thompson to William H. Graham, is expressly excluded) shall be declared, adjudged and decreed to be held by Joseph Thompson, as guardian for said Susan, Amanda and Penelope, children of William Blount, deceased.
(7.) That he will surrender to his said wards all the notes, bonds of individuals, and Cumberland county and State bonds, and all other credits which were held by him as guardian of said Susan, Amanda, and Penelope.
(8.) That he will execute and deliver quit-claim deeds of conveyance to the said tracts of land, hereinbefore mentioned, as he may be directed by the decree of the Court, or as he may be requested by the counsel and attorney at law of the said Susan, Amanda and Penelope.
(9.) That he will request R. S. French, trustee, in a deed from Thomas J. Morrisey to said French to secure Joseph Thompson for certain money loaned to said Morrisey by said Thompson as guardian aforesaid, to sell the said tract of land in said deed mentioned.
(10.) The said Alfred Rowland and wife, Thomas Norment and wife and Alfred Rowland, guardian for Penelope Blount, will pay all other costs incurred or to be incurred in said actions except the sum of two hundred dollars, to be paid by said Joseph Thompson as aforesaid.
(11.) The said Thomas Norment and wife will pay an account held by Pope and McLeod, amounting to about four hundred and fifty dollars, against said Joseph Thompson as guardian.
(12.) When this compromise is fully effected according to the foregoing terms, and the said Joseph Thompson has fully *Page 513 
paid and discharged the said sums respectively, the said Joseph Thompson and his sureties, upon the bond given by him as guardian as aforesaid, and said Joseph Thompson as trustee, shall be discharged and released from all obligations incurred by them as sureties on said guardian bond.
(13.) This compromise shall in no way operate to discharge or release Thomas J. Morrisey or Berry Godwin from any obligation they may be under to said Susan, Amanda or Penelope, the children of said William Blount.
 (Signed) R. S. FRENCH, Attorney for JOSEPH THOMPSON.
 (Signed) ROBERT STRANGE, for plaintiffs in above named cases.
It was admitted by the plaintiffs, for the purposes of this suit only, that the compromise had been performed in full except as to the following particulars:
1. That Joseph Thompson had not executed nor tendered a proper deed for the seven hundred acres of the Willis P. Moore land.
2. That no decree has been made declaring or decreeing that Joseph Thompson holds said land as guardian of the feme plaintiffs, in accordance with article six, of the compromise.
The plaintiffs further admit that the $5,500 mentioned in the compromise, had been paid to the parties therein named, as directed therein, and that the notes, bonds of individuals, Cumberland county and State bonds, have been assigned and delivered, but no other credits have been so transferred.
The plaintiffs further admitted that the money was paid and the three notes given for the land, and that the Confederate money was paid and the three notes taken up as alleged by defendant, but they do not admit that it was paid at the time stated.
For the purposes of this suit the defendants withdrew the allegation "that the plaintiffs, in a settlement with defendant *Page 514 
Thompson as their guardian, knowingly received from him the securities, in which the money so paid, was invested by him. Defendants further admitted the release of dower alleged in the complaint."
To the report of the referee, the plaintiffs filed the following exceptions:
1. Plaintiffs except to the second conclusion of law, to-wit, hat the payments made by Berry Godwin, in Confederate money, to the defendant, Thompson, on the 18th day of April, A.D. 1863, and in July, 1863, as stated by him, were in law a satisfaction and extinguishment of the debt owed by him for the purchase of the lands, and that the plaintiffs had no right of action against said Godwin, and that this action should be dismissed as to him at the cost of the plaintiff.
2. That he has failed to report any conclusion of law touching the irregularities of the sale of the plaintiffs' land, and has failed to report that the same was unauthorized by law, and conveyed no title to the defendant, Godwin, and insists that the facts found by the referee entitles the plaintiffs to the relief prayed for in the complaint.
The case coming on to be heard, his Honor overruled the exceptions of the plaintiff and confirmed the report of the referee.
From this judgment the plaintiffs appealed.
1. The position taken by the plaintiffs that the deed of the Clerk and Master is void because the Court had no power to order it to be executed, and consequently that the plaintiffs are entitled to judgment for the land and mesne profits, cannot be sustained.
It is most usual for sales made by the order of a Court of Equity to be public sales, but the Court, as the guardian of *Page 515 
infants, has full power in regard to the mode of sale, and under special circumstances not only has power, but should, in the exercise of its discretion, authorize and confirm what is called a private sale; that is, a sale without advertisement and public outcry.
The question, has a Court of Equity power to order the sale of the land of an infant to be made either at public or private sale, is not an open one; it is settled. See the cases in Battle's Digest.
We will add, assuming that it was for the interest of the wards that the land should be sold, and this matter was adjudicated by the order that the Clerk and Master sell at public sale, we think his Honor used a prudent discretion, after no sufficient bid could be obtained at public outcry, in accepting the bid of defendant Goodwin and in making an order confirming the private sale.
The usual modes of selling by order of Court or by executors and administrators is after advertisement and public outcry or vendue, i. e., auction, as the traders term it; but if an executor or administrator sells a horse to A at private sale, he acquires title against the world. For the executor or administrator had the title and the power to sell. The only difference is, that if it be a public sale, the executor or administrator is only chargeable with the price obtained. If it be a private sale, the executor or administrator is chargeable with the full value. The statutes which require advertisement and a public sale being considered directory only, and not affecting the substance.
2. The position taken by the plaintiffs, that "the deed to Godwin, by reason of a departure from the terms of the order, will be treated as a lien only for the sums he has actually paid, leaving the equitable estate in the plaintiffs, subject to re-payment to Goodwin of the money paid by him, with interest, charging him in account with the rents and profits which he has realized from the land," cannot be sustained. *Page 516 
There was no material variance between the terms of the order and the mode in which the sale was completed. The $8,000 bond of Sanders endorsed by Godwin, and the cash paid was a fair equivalent for the first two instalments, and it is admitted this amount has been accounted for, so there was no loss to the fund in that respect, and the three notes taken for the balance were in strict accordance with the order.
3. The position taken by the plaintiffs, that these three notes have never been paid by Godwin except to the amount of the value of the Confederate notes received by Thompson, has force in it. As respects the first note which was due at the time of payment, we can see no reason why that shall not be treated as satisfied in full. It was due, the creditor had a right then and there to demand payment, and if refused, to enforce payment by action. So it is the ordinary case of a creditor who accepts Confederate notes in satisfaction of the debt.
But as respects the other two notes, the matter involves different considerations not being due for one and two years, the debtor had no right then and there to pay them, and the creditor had no right then and there to demand payment and could not have enforced payment by action, so the payment was a voluntary one, and however it might be, as against Thompson who accepted the Confederate notes at par; as against the wards, who were the real creditors, the debtor cannot in conscience insist upon its being a payment, except to the amount of the value of the Confederate notes at the time he handed them over to the guardian, and has no right to require that he should be credited except for the value of the notes which he parted with. It is certain he has not paid for the land. Suppose he had not handed the Confederate notes to the guardian he would have been bound for the full amount of his two bonds, and we think he is getting off on fair terms if he is now permitted to pay the price of the land and keep it, taking credit for the value of the Confederate notes, and rendering no account for the rents and profits received by him, before the land was paid for in full. *Page 517 
4. The fact that the plaintiffs, by a compromise among other things took from their guardian the Confederate bonds, into which he had converted the Confederate treasury notes, which he had received of Godwin after these Confederate bonds had become wholly worthless and not worth the paper on which printed, does not affect the equity of the plaintiffs. It is admitted that by the compromise the plaintiffs took no benefit by reason of the two bonds now under consideration, and by way of greater caution it is expressed that the compromise shall in no wise discharge their claim on Godwin for the part of his three notes remaining unsatisfied.
There will be a reference to the Clerk of this Court to fix the value of the Confederate treasury notes paid on the two last notes of Godwin, and the plaintiffs may then move for judgment. In stating the account the Clerk will charge Godwin with simple interest only; as against their guardian, the wards are entitled to compound interest, and if the notes had been held by the guardian, Godwin would have been liable for compound interest. Bat. Rev. ch. 63, sec. 29.
The guardian did not hold the notes but accepted Confederate treasury notes in payment and surrendered the notes to Godwin. After that, Godwin was not a debtor of the infants or their guardian, by bond or note. But the infants had an equity to follow the land in his hands for the unpaid balance of the price.
We see no ground under the statute to allow this equity to draw compound interest. The infants must be content with simple interest as against Godwin and look to their guardian for compensation in that respect.
Error.
PER CURIAM. Judgment accordingly. *Page 518