W. J. SUTTON and wife v. JAS. T. SCHONWALD and others.

*Judicial Sales—Irregularity in proceeding does not invalidate the title of innocent Purchaser.*

The court of equity has full general jurisdiction over the estates of infants, and where land of an infant was sold under its decree upon petition of a guardian, the title acquired is not rendered invalid by the reversal of the decree on account of irregularity in the proceeding, of which the purchaser had no notice.

(*Leary* v. *Fletcher*, 1 Ired., 259; *Williams* v. *Harrington*, 11 Ired., 616; *Campbell* v. *Baker*, 6 Jones, 255; *Rowland* v. *Thompson*, 73 N. C., 504; *Chambers* v. *Brigman*, 75 N. C., 487; *Dudley* v. *Cole*, 1 Dev. & Bat. Eq., 429; *Stanly* v. *Massingill*, 63 N. C., 558, cited and approved,)

CIVIL ACTION tried at Fall Term, 1881, of NEW HANOVER Superior Court, before *Shipp, J.*

The plaintiffs in this action seek to have set aside a decree of the late court of equity. As made by the pleadings and exhibits the case is as follows:

David Smith died in the year 1862, seized of a parcel of land situate in the city of Wilmington, and leaving as his only heirs at law, the feme plaintiff and a son named David, both being infants of tender years.

SUTTON *v.* SCHONWALD.

At December term, 1862, of the county court for New Hanover county, the defendant Schonwald applied to be appointed guardian of both of said infants, and supposing that such appointment had been conferred upon him, gave a bond sufficient to cover their joint estates, but the records of the court show his appointment as guardian for David only. In 1863, at the fall term of the court of equity held for said county, the said defendant Schonwald, as, guardian of both infants, filed a petition for the sale of the land, assigning as a reason for its sale, that it yielded small rents and that the interest of the children would be promoted thereby. At the same term, it was referred to the master to ascertain and report whether the sale as asked for, would be conducive to their interests. The master took evidence in the shape of affidavits, as to that point, which he returned with his report recommending the sale to the court; and thereupon the court made a decree directing a sale of the land after advertisement, for cash.

The sale was made as directed, and a report thereof made to spring term, 1864, for said court, one C. E. Thorburn being the purchaser at the price of ten thousand dollars, and a decree of confirmation and for execution of the title to the purchaser. The purchaser paid the money to the clerk and master of the court, who paid it to the defendant Schonwald as guardian of the infants, and being Confederate currency, it perished in his hands by the results of the war. The master made the purchaser a deed, who afterwards sold it to the defendants, Kidder and Martin, for value and without any notice of any irregularity in the proceedings, and they in turn sold it to the other defendants. The feme plaintiff intermarried with the co-plaintiff before becoming of age and has been covert ever since. At the trial certain issues were submitted, and responded to as follows:

1. Was James T. Schonwald appointed guardian of the infants, Kate and David, and if so, when? No.

2. Was a petition filed in the court of equity, and an order of sale made after a reference to the master, and his report that it was for the interest of the infants, and. did the sale take place, and was the same reported and confirmed, and order for title made, and deed executed to the purchaser as alleged? Yes.

3. Had Schonwald been appointed guardian of the feme plaintiff at the time of the filing of the said petition, or was he appointed at any time before payment of the purchase money and the execution by the clerk and master of the deed to the purchaser? No.

The court thereupon gave judgment declaring that the order of sale made at fall term, 1863, of said court of equity, be annulled and vacated as to the feme plaintiff and her interest in the land, and also the order confirming the sale and the deed made in pursuance thereof, so far as related to her title and interest in said land, from which judgment defendants appealed.

*Messrs. Russell & Ricaud,* for plaintiffs.
*Messrs. E. S. Martin* and *A. T. London,* for defendants.

RUFFIN, J. We cannot concur in the view taken by His Honor. The most that can be said towards impeaching the decree of the court of equity, the vacation of which is the purpose of the present action, is, that it was irregular. It was the work of a court of competent jurisdiction pertaining to the whole cause, its subject matter, and its parties, and was but an instance of that general authority over the estates of infants, which the courts of equity have so long exercised, that it is now found impossible to trace the source from which it was derived. 2 Story Eq., § 1328.

The plaintiff's counsel indeed insisted, that in this state

the power of the court of equity to sell the lands of an infant at the instance of his guardian, was a special one, and wholly derived from the statute of 1827 (Rev. Code, ch. 54, § 32), and that unless every requirement of the statute was strictly complied with, no attempted sale of an infant's lands could be valid ; that in such case it would be an act void, because done wholly without authority, and not one irregularly done within the scope of the court's authority.

If the premises assumed by counsel be true, then certainly his conclusion is correct. For all the authorities agree in saying, that those powers which are created and conferred specially by statute, are to be strictly construed, and whatever formalities are prescribed must be punctually fulfilled, as the courts have no power to dispense with the requirements of a statute, and most especially is this principle rigidly adhered to, in the case of judicial and probate sales. Freeman on Void Judicial Sales, § 53; *Leary* v. *Fletcher,* 1 Ired., 259.

But since the decision made in *Williams* v. *Harrington*, 11 Ired., 616, there can be no longer room for doubt as to the extent of the jurisdiction vested in the courts of equity of this state, to dispose of the estates, whether real or personal, of infants for their benefit. That was an action at law it is true. But the very point upon which it hinges, was the character and extent of the jurisdiction of the court, whose decree was then the subject of attack—if general, it could not be collaterally impeached, but if special, then it was open to attack. Without any sort of reservation, it was declared that in this state the courts of equity, as constituted by the act of 1782, had the full jurisdiction and authority over the estates of infants, that was ever lodged in the court of chancery, than which no jurisdiction over any subject could be more extensive; and that in its exercise, the acts of those courts were to be regarded as those of a tribunal possessing a *general* jurisdiction over the subject,

and not a limited one, with power to proceed only for spe-
cial purposes, or in a particular way.   To the same effect is
*Campbell* v. *Baker*, 6 Jones, 255, in which it is also said that
the act of 1827 was never understood either by the courts
or the profession, as having ousted the prior jurisdiction of
the courts over the subject.   Also *Rowland* v. *Thompson*, 73
N. C., 504, in which it was held that a court of equity, *as
the guardian of infants*, had full power in its discretion to au-
thorize or confirm a private sale of lands belonging to such
a person.

We have been thus particular in determining the ques-
tion of jurisdiction, because upon it depends another prin-
ciple decisive, as we regard it, of the rights of the parties,
and indicating very clearly that so much of the judgment
in the court below as annulled the title acquired by the
purchaser at the master's sale, is erroneous.

The title acquired at a judicial sale of lands made by a
court of competent jurisdiction, is not rendered invalid by
reason of the reversal of the decree for irregularity in the
proceedings, of which the purchaser could have no notice.
There is no case in our reports, coming within our observa-
tion, that goes the full length of this doctrine.   The nearest
approach to it is in *Chambers* v. *Brigman*, 75 N. C., 487, in
which the title of the purchaser (he being also the plaintiff
in the proceeding) was held inoperative, upon the ground
that the defendant had not been really a party to it, and
Mr. Justice RODMAN expresses a doubt whether it could have
been done, in case a stranger without notice had been the
purchaser.   A similar doubt as to the effect of a decree re-
versing for fraud a judgment at law, upon the title of a pur-
chaser at execution sale, was expressed in *Dudley* v. *Cole*, 1
Dev. & Bat. Eq., 429.   We find, however, the principle
broadly laid down in Rorer on Judicial Sales, §§ 138, 139,
expressed almost in the very terms we have stated it.   In
*Gaudy* v. *Hall*, 36 Ill., 313, the supreme court of that state

thus state it: If the court has jurisdiction to pronounce the decree, that is, if it has jurisdiction over the parties and the subject matter, then upon principles of universal law, acts performed, and rights acquired by third persons, under the authority of the decree and while it remains in force, must be sustained, notwithstanding its subsequent reversal. And again the principle was recognized and acted upon by that court in *Fergus* v. *Woodworth*, 44 Ill., 374. In *Vorhees* v. *The Bank*, 10 Peters, 450, and *Gray* v. *Brignardillo*, 1 Wall., 627, the supreme court of the United States say, that it is a well settled principle of law, that the decree of a court, which has jurisdiction of the person and subject matter, is binding until reversed; and although it may be reversed, yet all rights acquired under it while in force and which it authorized will be protected, and all that a third person is required to observe is, whether the court did in fact possess such jurisdiction and exercise it, and that the order, upon the faith of which he purchased, was made and authorized the sale.

In such cases the law proceeds upon the ground, as well of public policy, as upon principles of equity. Purchasers should be able to rely upon the judgments and decrees of the courts of the country; and though they may know of their liability to be reversed, yet they have a right so long as they stand, to presume that they have been rightly and regularly rendered, and they are not expected to take notice of the errors of the court, or the laches of parties.

A contrary doctrine would be fatal to judicial sales and values of title derived under them, as no one would buy at prices at all approximating the true value of property, if he supposed that his title might, at some distant day, be declared void, because of some irregularity in the proceeding altogether unsuspected by him, and of which he had no opportunity to inform himself. Under the operation of this rule, occasional instances of hardship (as this one of the present plaintiffs seems to be) may occur, but a different

one would much more certainly result in mischievous consequences, and the general sacrifice of property sold by order of the courts.   Hence it is, that a purchaser who is no party to the proceeding, is not bound to look beyond the decree, if the facts necessary to give the court jurisdiction appear on the face of the proceedings.   If the jurisdiction has been improvidently exercised, it is not to be corrected at his expense, who had a right to rely upon the order of the court as an authority emanating from a competent source— so much being due to the sanctity of judicial proceedings.

In the case of *Williams* v. *Harrington, supra,* the plaintiff's land had been sold under an order of the court of equity, upon a petition filed for him by one Chalmers, professing to be his guardian.   He sought to avoid the sale upon the ground that he had no such guardian, and as a means of testing its validity sued at law for the land.   The court held that, admitting it to be true that his petition was filed by one not truly his guardian, its only effect was to render the proceeding irregular, and that it could not be collaterally assailed.   So we say in this case, the proceeding under which the plaintiff's land was sold was certainly irregular; but being nothing more, and possessing so much virtue as not to admit of its impeachment by any other tribunal, then, upon every principle of policy, or strict right, it should not be allowed to be reversed (though in a direct proceeding in the same court) at the cost of an innocent purchaser.

If injured, the plaintiff must look for redress, either to him who falsely assumed to be her guardian, or the officer who incautiously passed her estate into his hands.   Though, if it be true that an appointment of a guardian for her was really made, and that the omission of the clerk to record the same is the source of trouble between the parties, it would be better, perhaps, to have the record of the county court so amended as to show the truth— which amendment can be

made under the sanction of the superior court. *Stanly* v. *Massingill*, 63 N. C., 558.

The plaintiff's action must be dismissed with costs to all the defendants except the defendant Schonwald.

Error.            Judgment accordingly.