CLARK, C. J., dissenting.
This proceeding was commenced on 22 April, 1912, before the (147) clerk of the Superior Court of Henderson County. It is alleged in the petition that the petitioners and the defendants are the owners in fee simple as tenants in common of a large body of lands, described in 77 grants issued by the State, and that within these boundaries there is a tract of 290 acres, described in paragraph 2 of the petition, and two tracts of 220 acres and 800 acres, respectively, described in paragraph 3 of the petition.
It is further alleged in the petition:
"(6) That, owing to the large number of parties interested, and the character, condition, and location of said property, actual partition thereof cannot be had without injury to all the parties interested, and the interests of all parties require a sale of said lands, and the interests of all will be enhanced by the sale thereof. *Page 121 
"(7) That the Appalachian Power Company, a corporation, has offered for the tract of land and water rights described in paragraph 2 of this petition the sum of $40,000 cash, and your petitioners are advised and believe, and so allege, that the said sum is a full and fair price for the same; that the said Appalachian Power Company is ready, able, and willing to pay the said price for the said land and water rights on the delivery to it of a deed conveying a good and sufficient title in fee simple therefor.
"(8) That the owners have a prospective purchaser for the tract of land and water rights described in paragraph 3 of the petition for approximately the sum of $90,000 cash, and your petitioners are advised and believe, and so allege, that the said sum is a full and fair price for the same."
And the petitioners pray judgment, among other things, as follows:
"(2) That, if upon investigation it shall be found by the court that the price offered by the said Appalachian Power Company for the lands and water rights described in paragraph 2 of the petition is a full and fair price, the court direct the said commissioners to sell the same to the said Appalachian Power Company for said price at private sale and execute deed therefor to said corporation upon (148) payment of said purchase money.
"(3) That if upon investigation it shall be found by the court that the price offered by such prospective customer mentioned in paragraph 8 hereof for the lands and water rights described in paragraph 3 of this petition is a full and fair price, the court direct the said commissioners to sell the same to the said purchasers for said price at private sale, and to execute a deed therefor upon payment of the said purchase price.
"(4) That the other lands be sold either at public or private sale in such manner and at such time as the court may direct."
There are many defendants, all of whom are nonresidents, some being unknown, and some infants.
Process was served on the defendants by publication, which was complete on 23 May, 1912. Guardians ad litem were duly appointed for the parties unknown and for the infants. On 23 May, 1912, one of the guardians ad litem
filed a demurrer to the petition, upon the ground that the clerk did not have jurisdiction of the matters therein alleged, and, upon the same being overruled, appealed, which appeal was heard at July Special Term of said county of Henderson. The said term convened 29 July, 1912. Prior to the meeting of the said court, the attorneys practicing therein had prepared a calendar, and *Page 122 
the above entitled case was placed on said calendar for hearing on 6 August, 1912. On the published calendar it was noted that motions in all cases would be heard on the first day of the court. It was called to the attention of counsel for the plaintiffs in the case that the case had been inadvertently placed upon the civil-issue docket for the trial of jury cases, and thereupon counsel for the plaintiffs prior to the commencement of the court lodged notice that the said case would be called for hearing on the first day of said court; this being in accordance with the practice prevailing among the members of the bar of said county. On the first day of the court the demurrer which the guardianad litem had filed to the jurisdiction of the clerk of the court, before whom the action was brought, was heard, and the same was overruled, and the court there upon appointed a separate guardian ad litem
(149) for the infant defendant, Charlotte T. B. Cram, and a separate guardian for the unknown defendants and those holding contingent interest, all of which will appear in the record. These orders were made on the first day of the court, and the guardians ad litem
filed answers on the second day of the court.
On 30 July, 1912, the Appalachian Power Company made the following offer to Justice, who had been appointed commissioner to sell, which was reported to the court, with the recommendation that it be accepted:
"The Appalachian Power Company, a corporation, hereby makes an offer of forty thousand dollars ($40,000) in cash for the tract of land and water rights described in paragraph 2 of the petition. The said Appalachian Power Company also offers ninety thousand dollars ($90,000) for the land and water rights described in paragraph 3 of the petition, the same to be paid as follows: Fifteen thousand dollars ($15,000) in cash and the balance to be paid in twelve (12) months, without interest, title to be retained by the commissioner until payment in full."
The guardians ad litem filed answers, admitting the allegations of the petition, and that the amounts offered by said power company were a fair value for the property. In addition to the personal knowledge which each of the guardians ad litem had of the value of the land and water rights and easements mentioned in the second and third paragraphs of the petition, there were at the time of filing these answers the affidavits of five persons conversant with said values, to the effect that the sums of $40,000 and $90,000 were, respectively, full and fair value for the land, water rights, and easements set forth in the second and third paragraphs of the complaint, and the court found that the guardians ad litem were entirely justified in filing answers admitting *Page 123 
that these sums were fair value for the same. The commissioner appointed to sell the lands was himself a resident of Henderson County, and familiar with the values of the property in question, and he reported to the court that the said offers were full and fair value for the same.
On the afternoon of Wednesday, 31 July, a motion was made by counsel for the plaintiffs that the bids of the Appalachian Power Company be accepted, and the said motion was considered in open court, and upon considering the same and the recommendation (150) of the commissioner, together with the affidavits as to the valuations, the court found that the said offers were full and fair value, and that it was for the best interest of all concerned that the said offers should be accepted. Before accepting the same, however, the court inquired if there was any objection on the part of any one to the acceptance of said bids, and there was no objection, and thereupon the court signed the order, as appears in the record, accepting said bids, and directing the commissioner to make title upon the payment of the purchase money in accordance with said bids. Attorneys for the plaintiffs demanded that the said Appalachian Power Company immediately pay the cash payments called for in said bids, and thereupon, in accordance with the said demand, the Appalachian Power Company did on the evening of 31 July give to the commissioner drafts or checks for the amount of the bids, which said drafts or checks were paid a day or two later, and the commissioner executed and delivered to the Appalachian Power Company a deed conveying to said corporation the lands, water rights, and easements described in the second paragraph of the petition, and gave also to the said Appalachian Power Company a receipt for $15,000 cash payment for the other land.
On 6 August, 1912, H. L. Borland, purporting to be the agent of Kuhn 
Kuhn, made an offer in their behalf in open court to pay $145,000 for said property, which said offer was amended on 9 August, 1912, by offering $145,000 for a good title to said property. At the same time he made the offer to pay $145,000 for a good title to said property as the agent of Kuhn Kuhn, the said Borland filed an application in his own behalf to have the decree confirming the sale to the power company set aside, and that he be made a party, alleging that he owned an interest in said lands. The claim of the said Borland to own an interest in said lands is based on three deeds, all of which were executed to him after said July special term began, one being of date 31 July, 1912, and the consideration therefor being $100, one of date 31 July, 1912, the consideration being $1 and other valuable *Page 124 
considerations, and one of date 1 August, 1912, and the consideration $1 and other good and valuable considerations. In opposition to (151) the motion of the said Borland, the petitioners filed the affidavits of E. B. Goelet and S. J. Justice as follows:
E. B. Goelet, being duly sworn, says: That he is a notary public residing at Saluda, in Polk County, and that on 1 August, 1912, he was called upon by some person, whose name he does not recollect, but who, he understood, resided in New York, to go to the residence of John and Martha Paris in Henderson County, to take the acknowledgment of certain papers, but, upon arriving, that the parties declined to sign the papers; that on the next day the same person requested him to go back to the same place, and that then the said John Paris and wife, Martha Paris, and Bessie Owens, their daughter, and her husband, Andrew Owens, all signed the paper and acknowledged it before him; that the paper was an instrument quitclaiming to one Borland all their rights in said lands in Henderson County bordering on the waters of Green River and Camp Creek; that the said parties who signed the deed stated that they had no papers to show any rights in the land, but thought they had some claim through Noah R. Paris; that all of them were illiterate people, and requested affiant to sign their names to said instrument while they held the pen; that the person at whose request he went out to take the acknowledgment stated that he desired the papers for use in the court in Hendersonville, then in session; that no money was paid at all, but an agreement was entered into to the effect that, if the paper was used, some $50 or $100 was to be paid, and in the event it was not used, nothing was to be paid; that affiant met the said Martha Paris in Saluda on yesterday morning, 9th inst., and she asked him if he had seen any of the parties, and stated that she had not yet received any money for the papers. E. B. GOELET.
 Sworn to and subscribed before me, this the 10th day of August, 1912. C. M. PACE, C. S.C.
(152) S. J. Justice, being duly sworn, says: That he is now, and has been for a number of years, the local agent representing the owners of what are known as the Speculation Company lands, in Henderson, Polk, and other counties, and that he has in his possession the documents and papers of said estate, extending over a long period of time; that these lands are the same ones mentioned in the complaint in this action, having been originally owned by Isaac Bronson and Goold Hoyt; that among the papers in his possession is a contract signed by William *Page 125 
Redmond, Jr., and Francis M. Scott, surviving trustees, to R. N. Paris, dated 11 January, 1894; that the said N. R. Paris was a son of John and Martha Paris, as he is informed, and the said N. R. Paris is not dead; that the description in said contract is as follows: "All that piece of land in the counties of Polk and Henderson, North Carolina, about 50 acres, adjoining Joseph Guice and John Johnston, in patents 1024 and 250, on the waters of Green River"; that the said contract appears to have gone into the hands of John Paris, and was by him transferred to one Dalton; that he found in the papers a statement to the effect that if the said Dalton did not pay cash due on or before January, 1903, that he would surrender all rights, and that it appears that he did not pay the same, and that the original contract, unrecorded, was surrendered to the estate; that he is informed and believes that if John and Martha Paris and their children claim any rights in any lands owned by the Speculation Company, it is through this contract; that the lands described in the contract are too indefinite to be located, but there are still lands belonging to the estate and not embraced in the boundaries set forth in paragraphs 2 and 3 of the complaint, which would fill this description in a general way; that he is familiar with the lands described in paragraphs 2 and 3, and that there are no adverse claimants located upon this land, but that it is in the possion [possession] of the estate. S. J. JUSTICE.
 Sworn to and subscribed before me, this 10th day of August, 1912. C. M. PACE, C. S.C.
The interest of all parties in the land who are nonresidents, and ase [are] not personally represented, does not exceed 25 per cent of the whole. Upon the hearing of said motions of said Borland, in behalf of (153) himself and Kuhn Kuhn, counsel for plaintiffs requested the court not to set aside the sale to the Appalachian Power Company, for the reason that they considered the sale was fair and just, and that the best interests of their clients would be subserved by letting the sale stand. Counsel for the Appalachian Power Company stated to the court that the offer made by the power company would be withdrawn, unless the same was accepted at that term of the court.
After considering all these matters, it was determined by the court that, even if the court had power to set aside the sale to the Appalachian Power Company, it was for the best interests of all parties that the sale should not be set aside. After hearing the said motions, the court made and entered the two orders thereon which appear in the record, and to the denial of the said several motions, and each of *Page 126 
them, the said J. A. and W. S. Kuhn and the said H. L. Borland excepted, in open court, and appealed to the Supreme Court.
The appeal of the guardian ad litem from the order of the clerk overruling his demurrer carried the entire case into the Superior Court, and vested it with full jurisdiction of the cause, under Acts 1887, ch. 276, now Revisal, par. 614 (Faison v. Williams, 121 N.C. 152;Roseman v. Roseman, 127 N.C. 494; Batts v. Pridgen,147 N.C. 134); and the Superior Court, being a court of general jurisdiction in law and equity, had the power to order and confirm a private as well as a public sale (Rowland v. Thompson, 73 N.C. 504; Suttonv. Schonwald, 86 N.C. 202; Barcello v. Hapgood, 118 N.C. 725;McAfee v. Green, 143 N.C. 418). In the Rowland case, Pearson,C. J., says: "It is most usual for sales made by the order of a court of equity to be public sales, but the court, as the guardian of infants, has full power in regard to the mode of sale, and under special circumstances not only has power, but should, in the exercise of its discretion, authorize and confirm what is called a private sale; that is, a sale (154) without advertisement and public outcry. The question, Has a court of equity power to order the sale of the land of an infant to be made either at public or private sale? is not an open one. It is settled." This case was approved in Sutton v. Schonwald, supra, the Court saying, after citing it: "In which it was held that a court of equity, as the guardian of infants, had full power in its discretion to authorize or confirm a private sale of lands belonging to such a person." And inBarcello v. Hapgood, supra, in which Justice Avery says: "`It is usual,' said the Court in Rowland v. Thompson, 73 N.C. 504, `for sales made by order of the court of equity to be public sales; but the court as the guardian of infants has full power in regard to the mode of sale, and under special circumstances not only has power, but should, in the exercise of its discretion, authorize and confirm what is called a private sale; that is, a sale without advertisement and public outcry.'" And he adds: "It is settled by a number of adjudications that The Code has not taken away from the Superior Court the jurisdiction heretofore exercised by courts of equity." In McAfee v. Green, supra, JusticeConnor, referring to the same question, says: "To the exception that the sale is directed to be made privately it is sufficient to cite Rowlandv. Thompson, 73 N.C. 504; Barcello v. Hapgood, 118 N.C. 712. The power of the court to order the sale to be made privately, when it *Page 127 
appears to be promotive of the interests of the parties, has been too frequently adjudged by this Court to be considered an open question." The first three of these cases were decided when the statute was in force (Acts 1868-69, ch. 122, par. 15), now a part of section 2513 of the Revisal, which required the officer appointed to make sale to file his report of sale within ten days, and the last when the statutes were as they are now in that section of the Revisal, and in no one of them does it appear that the report of sale was required to remain on file ten days or that the court waited twenty days before confirmation. On the contrary, the inference is clear from the report of the Thompson case
that the decree of confirmation was entered at the time the report of the commissioner was made, and in the McAfee case, decided under existing statutes, the offer to buy, the report of the commissioner, and the decree of confirmation were all at the same term of (155) court, as the case before us.
We conclude, therefore, that the section of the Revisal referred to (section 2513) relates to public sales, and that it does not purport to interfere with the power of a court of equity to order and approve a private one.
We have, then, before us a proceeding properly instituted, process duly served, an offer to buy, which has been accepted and performed, a decree of confirmation of the sale, regularly entered by a court of competent jurisdiction, and a deed executed pursuant to the decree, and we are asked by one not a party to reverse the ruling of the judge of the Superior Court refusing to set aside the decree, upon the ground of an advance bid of 10 per cent. There is authority for the position that after confirmation the biddings will never be reopened, except in case of fraud (Attorney-Generalv. Navigation Co., 86 N.C. 412), but as the decree of confirmation and the motion to set aside were at the same term of court, and as orders and decrees are usually within the control of the court during the term, we will consider the question as if the motion to confirm and a motion to accept an advance bid of 10 per cent had been made at the same time. It is undoubtedly true that an offer to increase the bid 10 per cent is a sufficient reason for ordering a resale, and that it is usual to accept such an offer, and the refusal of the court to do so should be exercised with extreme caution and only after careful investigation; but the offer is addressed to the discretion of the court, which means, according to ChiefJustice Marshall, when presiding at the trial of Aaron Burr, that it is addressed "not to the inclination of the court, but to its judgment, which is to be guided by sound legal principles." In Trull v. Rice, 92 N.C. 572, the proceeding was for a sale of land for partition. The land was sold under an order *Page 128 
made in the cause, and a report filed recommending a confirmation of the sale. A party to the proceeding made an advance bid of 10 per cent, and a motion to confirm the sale and a motion for a resale were heard at the same time. The clerk refused to order a resale and confirmed the sale made, and this ruling was affirmed by the judge (156) and again upon appeal to the Supreme Court; the rule being then declared that: "It is a well settled rule of practice in this State, which has long prevailed, to regard an offer of an advance bid of not less than 10 per cent on the sum reported upon a sale by a commissioner acting under an order of the court, as a sufficient reason for refusing to confirm the sale, and directing a resale of the property, while, after confirmation, the biddings will not be reopened, except in case of fraud or unfairness or other adequate cause shown for reversing the order. Attorney-General v. Navigation Co., 86 N.C. 408. But we have been referred to no cases in which, upon the mere ground of a proposal to increase the bid, and without regard to surrounding circumstances, this Court has undertaken in the exercise of an appellate jurisdiction in matters of law to compel the judge in the Superior Court to refuse the proposal of the reported bidder, and to direct a resale of the property."
This case has been approved on this point in Uzzle v. Weil,151 N.C. 132; Copping v. Manufacturing Co., 153 N.C. 330; and in Tayloe v.Carrow, 156 N.C. 8, the present Chief Justice saying in the first of those cases, which was a sale in foreclosure proceedings: "The brief of counsel for appellant is based on the ground that the court had the power to set aside the sale, and should have done so, upon the advance bid of 40 per cent. But conceding that, notwithstanding the increase in the value of land since 1895, it would have been just to the purchaser to now reopen the sale, the action of the court in refusing to do so is not reviewable. Trullv. Rice, 92 N.C. 572." And in the second, which was a proceeding in partition: "This action of the judge in setting aside the report and ordering a sale is not reviewable unless there is an error of law committed. In Simmons v. Foscue, 81 N.C. 86, the Court said: "Of the force and effect of the evidence in inducing the exercise of that reasonable discretion reposed by law in the judge when called on to confirm the action of the commissioners, he alone must determine, and if no error in law was committed, we cannot reverse his decision.' This has been cited and approved. Trull v. Rice, 92 N.C. 572."
(157) It follows, therefore, that his Honor exercised a discretion vested in him by the law when he refused to accept the advance bid, associated as it was with other unfavorable circumstances, and *Page 129 
that his discretion is not reviewable unless there has been an abuse of it, and we find none. the wise, prudent, and impartial judge before whom the hearing was had, lives in an adjoining county, and knows more of the parties and of existent conditions, perhaps, than any other judge of the Superior or of the Supreme Court, and he finds, after full consideration, that it is best for those interested in the land to leave the decree of confirmation in force. No party to this proceeding objects to this finding, or excepts to his ruling, and 75 per cent or more of the interest in the property is represented personally, and the remainder by guardians ad litem. The person who does except is one Borland, who purports to be the agent of Kuhn Kuhn, and no evidence of the agency was furnished except the affidavit of Borland. The offer which he filed as the agent of Kuhn Kuhn on 5 August, 1912, was to pay $145,000 for the property, but he amended the offer on 9 August, 1912, by stipulating that the sum would be paid for a good title to the property, and at the same time filed an application in his own behalf to be made a party, claiming an interest in the lands under deeds procured by him for nominal consideration, after the commencement of the term of court at which the application was made. It appears, also, that one of these deeds was based on a contract of purchase, which had been surrendered; that no money was paid for it, and that Borland said he wanted the deed for use in court; and there is no suggestion that any of the grantors in the several deeds had ever claimed an interest in the land until approached by Borland. Kuhn Kuhn have signed no offer, and the person who purports to be their agent comes into court holding in one hand an offer to buy if a good title can be made, and in the other a declaration that the court cannot give a good title, while the power company offers to take the property as it is. His Honor would have been justified, under these circumstances, in holding that there was not sufficient evidence of good faith, and that it was the part of wisdom to accept a fair price without litigation. We not only conclude that his Honor did not abuse his discretion, but think, on the facts appearing in this record, that he acted wisely in (158) refusing to set aside the decree of confirmation.
The application of Borland to be made a party was properly denied upon the facts presented, and any rights he has are preserved in the order entered.
Affirmed.