ANGUS BLUE and others v. DANIEL BLUE and others.

*Practice—Sale of Land for Division—Fraud—Irregular Judgment— Purchaser—Mistake.*

1. A Court of Equity will not disturb a sale of land for division, made by a commissioner of the Court, after a decree of confirmation merely because of an advance offered in the price ; *Aliter,* if an advance of ten per cent is offered before confirmation.

2. Generally, such a sale will not be set aside after confirmation excep upon the ground of fraud, but " fraud" should here be understood in its largest sense as including those cases of accident, mistake and surprise of which it is unconscientious to take advantage.

3. In order to acquire such sanctity as will make it inviolable except for the causes above set forth, a judgment or decree must be regularly rendered according to the course and practice of the Court. An irregular judgment is entitled to no such protection.

4. A judgment confirming the report of a commissioner selling for division rendered without notice to the parties in interest to come in and oppose the same if so advised, is an irregular judgment and may be vacated on motion.

5. Except in the case of an order merely formal and of course, a Probate Court has no power, on its own motion and without application

. from any party in interest, to make any order in an action. Such order is irregular and voidable, if not void.

6. A purchaser at a sale of land for division is under no obligation to disclose his opinion that the area of the land is greater than it is described to be at the sale.

7. A Court of Equity will set aside a judicial sale for division when it appears, (1) that the commissioner to make the sale sold for cash instead of on credit as he was directed by the Court to do, and (2) that there was a grave mistake as to the area of the land, common to all parties.

(*Ashbee* v. *Cowell*, Busb. Eq. 158 ; *Harrison* v. *Bradley*, 5 Ire. Eq. 136 ; *Huggins* v. *Fonville*, 3 Dev. 392 ; *Howzer* v. *Dellinger*, 1 Ire. 475 ; *Clayton* v. *Jones*, 68 N. C. 497 ; *In the matter of Bost*, 3 Jones Eq. 482 ; *Wilcoxon* v. *Calloway*, 67 N. C. 463, cited and approved.)

PETITION for Partition of Land filed in 1874, in the Probate Court, and heard on appeal at Fall Term, 1877, of RICHMOND Superior Court, before *Seymour, J.*

It was alleged that the parties were tenants in common of certain lands which descended to them as heirs at law of Malcolm Blue. The plaintiffs asked for an order of sale for partition, which order was granted, a sale made by a commissioner appointed for the purpose, his report returned and confirmed on the 12th of December, 1876. And shortly thereafter John Campbell, the purchaser, filed an affidavit stating that he bought a certain portion of the land known as the "McIntyre tract," and had tendered to the commissioner the amount of the purchase and demanded a deed for title, which was refused. Thereupon a rule was served upon the commissioner to show cause why he should not be attached for contempt in refusing to make the deed in accordance with the decree of the Court, and on the day after the service of the rule, notice was given to the commissioner and purchaser of a motion to set aside the sale of said tract and for a re-sale of same. In answer to the rule, the commissioner stated that before its service upon him, the parties in interest had instituted proceedings

to set aside the sale upon the ground of certain irregularities in conducting the same, which are sufficiently embodied in the opinion of this Court delivered by Mr. Justice RODMAN. The judgment of confirmation was set aside by the Probate Court and a re-sale of said tract ordered. His Honor reversed said judgment and remanded the case to the end that the commissioner upon receiving the amount of the purchase money execute a deed for the land. From which ruling the petitioners appealed.

*Messrs. McNeill & McNeill, J. D. Shaw* and *N. W. Ray,* for plaintiffs.

*Messrs. N. McKay, J. W. Hinsdale* and *R. A. Johnson,* for defendants.

RODMAN, J. It is admitted that the rule is established that a Court of Equity will not disturb a sale of land made by a commissioner of the Court for partition, *after a decree of confirmation,* merely because of an advance offered in the price. It has been said generally, that such a sale would not be set aside after confirmation, except upon some circumstances of fraud. *Ashbee* v. *Cowell,* Busb. Eq. 158 ; *Harrison* v. *Bradley,* 5 Ire. Eq ; 136. Probably the Court did not use the word " fraud " with absolute strictness ; for certainly cases of accident, mistake, and surprise are conceivable, which would call upon a Court to set aside a sale, as strongly as a case strictly of fraud. The rule is only an application of the general doctrine which prevails in all Courts, that no order or proceeding will be vacated, unless application for that purpose be made in apt time, and where no time is positively prescribed, apt time has been held to be before any proceeding has been taken, founded on the one which it is sought to vacate or modify. This doctrine is not only just and reasonable, but it is necessary for the or-

derly progress of a cause to final judgment. If a Court could be called on at the pleasure of a suitor to go back and review every previous order, and to disturb every thing which had been done under it, nothing would ever be established, and justice would be indefinitely delayed. But that an order confirming a sale may have the effect of precluding any inquiry into its own legality and propriety, and into the circumstances of the sale, it must be itself regularly made according to the practice of the Court, which is prescribed by considerations of justice and convenience.

When, therefore, the purchaser in this case sets up the order confirming the sale as conclusive against the plaintiffs in the absence of fraud, and as prohibiting any inquiry whether in consequence of some accident or mistake the property did not sell for less than its real value, it becomes material to inquire whether the order of confirmation was made under circumstances to make it binding on the plaintiffs, that is to say, whether they had an opportunity to be heard in opposition to it. It is a principle of universal justice, that no one is bound by a proceeding which he had no notice of, and on which he could not be heard.

These observations bring us to the inquiry, whether the order of confirmation in this case was regular. The facts bearing on this question are these: John McKay was appointed by the Probate Court a commissioner to sell, among other tracts, the McIntyre place, which is the subject of this application. I purposely omit to state the terms on which he was to sell, as not bearing on the particular inquiry we are now pursuing. He reported (the date of his report is not given) that he had sold the lands on the 28th of November, 1876, and that John Campbell had purchased the McIntyre place for $2,000. On the 12th of December, 1876, the Court confirmed the sale. Upon whose motion this order was made, or whether upon the motion of any one, or by the Court *ex mero motu*, does not appear. And it

does not appear that any party (under which term I include the purchaser) had any notice that the report of sale had been made, or that an order of confirmation would be moved for. Neither does it appear when the parties became informed of the order. In March, 1877, the plaintiffs made the motion to set aside the sale which is now before us. It is contended for the plaintiffs, that this order of confirmation was irregular for want of notice, and was void or voidable; that a motion to set it aside, if necessary, must be considered as included in the motion to set aside the sale; and that it ought not to be an obstacle to the consideration of their motion to that effect upon its merits.

When Courts were held at fixed periods, and for a few days only, parties to suits might reasonably be required to be in attendance during the whole of every term, and to take notice that at any time a motion for confirmation of a sale, or any other motion, might regularly be made. They were presumed to have notice of every proceeding in their suit.

But even then, notice was required to be given of every proceeding to be had out of term time, as of taking depositions, assigning dower, the surrender of bail, &c. *Huggins* v. *Fonville,* 3 Dev. 392; *Howzer* v. *Dellinger,* 1 Ire. 475. When the constitution of 1868 declared that the Courts should be always open for the transaction of all business, except trials by jury; (Art. IV. § 28, now 22,) it was necessary to provide for notice of all motions and other proceedings to be made or had out of term time, and the C. C. P. does provide for it specially in several cases; and in § 297, enacts generally, that all orders made out of Court,—that is, not in term time,—without notice, may be vacated, on motion.

After the enactment of the act suspending the Code of Civil Procedure in certain cases, and requiring (generally) all proceedings in actions in the Superior Courts to be taken

in term time, it was held in *Clayton* v. *Jones*, 68 N. C., 497, as a consequence of that act, that this rule of the presumption of notice was revived. But as the Probate Courts are always open, this presumption of notice cannot reasonably or justly be held to apply to proceedings in them. In them no day is even approximately fixed on which a report of sale shall be returned, or on which a motion to confirm or vacate a sale shall be made. In such cases, § 297 of C. C. P. applies. Continuous or perpetual attendance can not be required from parties.

. If the time for moving for an order to confirm or vacate a sale or other proceeding can be chosen by one party without notice to the other, and if an order so made is to have the effect contended for, and to shut off all inquiry into its legality or propriety, frequent injustice is likely to result, and a rule founded on reasons of justice and public convenience will become convenient only as a means of fraud. In England, it seems that some actual notice of every motion or proceeding is in general required. But the difference in this respect between the stated terms of the Nisi Prius Courts, and Courts always open, or open only at uncertain periods, seems to be taken. " A notice to try at the Assizes, need not specify any particular day, but it is otherwise if the trial be before the sheriff, or the recorder of a borough." *Farmer* v. *Mountford*, 1 Dowl, 366, N. C.; Tidd's Pr. 9th, Edition 468.

A Probate Judge has no power to make an order in an action, except one merely formal and of course *ex mero motu*, without an application from any party, in the absence of all of them, and without notice to them. He has no right to become an actor or a party in any case pending before him. Such an order is irregular and voidable, if not void. The order of confirmation was at least irregular, because made without notice to the parties, and when they had no opportunity to oppose it. It was liable to be vacated on the

application of any party within a reasonable time.   By the act of 1868-'9 (Bat. Rev., ch. 85, § 5), a notice of ten days is required before the confirmation of an *actual* partition. We think that the motion to set aside the sale now under consideration, includes within it, a motion to vacate the order of confirmation, which therefore presents no obstacle to a consideration of the motion to set aside the sale upon its merits.   We consider this motion as if it had been made when the motion for confirmation was made, and in opposition to it.   Should the sale be confirmed?

There is no evidence of fraud on the part of any one.   It is possible, or even probable, that the purchaser thought that the area of the land was greater than it was described to be at the sale, but he was under no duty to publish his opinion, and was guilty of no fraud in omitting to do so. Kerr on Fraud, &c., 414,57,58.   It appears, however, (1) that the commissioner sold for cash instead of on credit, as he was ordered by the Court to do, and, (2) that there was a gross mistake as to the area of the land, common to all the parties.   It was described in the original petition as estimated to contain 1400 acres, and by the commissioner in his report, and impliedly at the sale, as 1170 acres, and it seems probable, and for the present purpose we must assume that it does in fact contain, 2400 or 2500 acres.   The commissioner sold without having made an effort to ascertain the true area.   We conclude that the commissioner was guilty of some negligence, and that the misdescription of the area caused the land to sell for less than its real value. The practice in this State is to set aside a sale before confirmation upon an offer of an advance of ten per cent upon the price.   That also is the English practice.   Generally in the United States the Courts will not set aside a sale upon a mere advance of price; they require in addition some circumstances of fraud or accident, mistake or surprise; but slight circumstances are sufficient if they appear

to have materially depreciated the price, and especially if the application is made before the purchaser has incurred expenditure for improvements &c., for which he will generally be allowed. *Bost ex parte,* 3 Jones Eq., 482.

In *Goode* v. *Crow,* 51 Mo., 214, the sale was set aside because rumors had gotten in circulation that the sale would not take place on the day advertised, but on the next day. In *Leferre* v. *Laraway,* 22 Barb., 173, one of the owners and parties swore that he had intended to pay $9,000, but was in such a state of nervous excitement during the sale, that he permitted the property to go for $7,000. The sale was set aside on terms.

There is no offer in this case to advance the price. The co-tenants do not all appear to be *sui juris.* Some of them are described as the heirs of such an one,—names unknown. These, of course, can not be represented by counsel. We can not therefore be governed by the wishes or conceptions of those of the co-tenants who are *sui juris,* as expressed by their attorneys, but have to regard the interest of those unknown parties who are not so represented, and some of whom are probably infants. We are not therefore at liberty to assume absolutely that a re-sale will be for the interest of all the co-tenants, and we have endeavored to provide for those who do not appear, in our decree. We think it can not be doubted that a contract for sale *inter partes,* would be rescinded at the instance of either party, when it appeared that a mutual mistake existed as to the area of the land contracted to be sold, of so grave a character as appears to have existed in this case, although neither party was in fault. *Wilcoxon* v. *Calloway,* 67 N. C., 463; Fry on Specific Performance, 109; 1 Story Eq. Juris, § 132; Kerr on Fraud and Mistake, 363, citing *Earl of Durham* v. *Lagard,* 34 Beav., 612; *Marbury* v. *Stonestreet,* 1 Md., 147; *Kent* v. *Careand,* 17 Md. 291.

The order of confirmation is set aside for irregularity,

and the case is remanded to the Superior Court, with directions to remand it to the Probate Court, with directions to that Court, to order a survey of the McEntyre place, for the purpose of ascertaining its boundaries and area. And if it shall appear to contain materially more than 1170 acres, and any person will advance the bid of Campbell by ten per cent or more, and give security to pay that advanced sum in case he shall be declared the purchaser, then to set aside the sale, and order a re-sale by the same or another commissioner, on a credit as originally ordered.

As the purchaser is not in the wrong, the plaintiffs will pay their own and his costs in this Court. Let this be certified, &c.

Error.

PER CURIAM.                              Judgment accordingly.