STATE EX. REL. ATTORNEY GENERAL v. ROANOKE NAVIGATION COMPANY.

*Judicial Sale—Reopening Biddings upon an Advance Price.*

1. Before the report of a judicial sale is confirmed, the biddings may be reopened and the property resold upon an advance offer of ten per cent. made at the term ensuing the sale ; and this may be done more

than once. The purchaser has no independent right before the sale is confirmed, but is regarded as a mere preferred proposer.

2. Although in such case the court looks with jealousy upon the application of one, who was a bidder at the sale, to reopen the biddings, yet the advance price offered by him will be taken as a compensation for any loss that may have arisen from a want of competition at the sale.

(*Miller* v. *Feezor*, 82 N. C., 192; *Bost Ex Parte*, 3 Jones Eq., 482; *Blue* v. *Blue*, 79 N. C., 69; *Wood* v. *Parker*, 63 N. C., 379; *Pritchard* v. *Askew*, 80 N. C., 86, cited and approved.)

APPEAL from an order made at Spring Term, 1882, of Halifax Superior Court, by *Bennett, J.*

At the fall term 1881 of the superior court for the county of Halifax, a judgment was rendered in the above entitled action, appointing Thomas N. Hill, Esq., receiver, and clothing him with all the powers and duties prescribed in the act of the legislature of this state entitled an act for the dissolution of the Roanoke Navigation Company. Act 1874–'75, ch. 198.

That by virtue of the power in him vested as such receiver, and after due advertisement, he proceeded to sell on the 6th day of February, 1882, the works and property of the Roanoke Navigation Company, between the town of Weldon and the town of Gaston, and at Weldon, including its canal or canals, together with all its franchise, rights and privileges, one fourth of the purchase money to be paid on the day of sale, and the residue on the first day of the term of the superior court for the county of Halifax next after the sale. And at the ensuing term of said court (spring term 1882) he reported that he had sold the same on the said 6th of February aforesaid to the highest bidder at public auction, and that Robert B. Peebles and others were the last and highest bidders at the price of seventeen thousand seven hundred and fifty dollars, and that they had complied with the terms of the sale. He further

reported that he had been notified that an application to reopen the biddings for said property would be made at the spring term, but that no application had been filed with him; and that should no such application be filed, he believed that, owing to certain claims to a portion thereof which have been asserted, and to the outlay of money which will be needed to put the said property in good condition and suitable repair, the price for which it sold is as much as it will ever bring, and therefore in that event he recommended a confirmation of the sale.

At the said spring term after the report was submitted, the purchasers moved for a confirmation thereof, and at the same term R. T. and S. P. Arrington, trading under the name and style of John Arrington & Sons, filed a petition in the cause that they were informed and believed and so charged, that the said property and franchise are worth justly more than the sum bid by the said Robert B. Peebles as aforesaid; that they are now willing and ready to bid and pay for said property according to the terms of the sale in said decretal order set forth, a sum ten per cent. larger than that bid by the said Peebles, and prayed for a reopening of the biddings.

The motion of the purchasers was supported by the affidavit of R. B. Peebles who stated that the property brought its full value; that S. P. Arrington was at the sale and was the next highest bidder to the affiant; that he and those connected with him in his bid, had it in contemplation to build a large first-class cotton factory, and in time other factories; and that he and those associated with him are residents, while Arrington and his associates are non-residents and propose to buy only upon speculation.

After hearing the petition and affidavit, His Honor rendered judgment, in which, after reciting amongst other things, that the petitioners had paid to the receiver, Thomas N. Hill, the sum of four thousand eight hundred and eighty-one dollars and twenty-five cents to secure their said offer,

to the end that the biddings might be opened, he ordered that the sale be set aside and the receiver repay and refund to the said purchasers the sum of seventeen thousand seven hundred and fifty dollars paid by them, and that the receiver again expose the property and franchise to sale upon the terms prescribed in the judgment.

From this judgment the said Peebles and associates appealed.

*Attorney General*, for the State.

*Messrs. W. C. Bowen* and *Reade, Busbee & Busbee*, for the purchasers.

*Messrs. Gatling & Whitaker*, for the Arringtons.

ASHE, J. The sole question presented by the appeal for our consideration is, was there error in the ruling of the court below in setting aside the sale and re-opening the biddings.

The appellants insist they have rights, acquired by the sale and the report of the commissioner, and the ruling of the court below is in violation of their rights. But the doctrine has been settled in this state, that the bidder at a judicial sale, such as this, acquires *no right* before the confirmation of the report of the commissioner who made the sale under the order of the court. Until then, the bargain is incomplete. The highest bidder at such sale acquires by the acceptance of his bid, no independent right, but is regarded as a mere preferred proposer, until the confirmation of the sale by the court. *Miller* v. *Feezor*, 82 N. C., 192, and cases there cited. See also the matter of *Bost and others*, 3 Jones Eq., 482.

All the authorities agree that courts of equity have an absolute power over all sales had under their orders—in confirming or setting them aside and re-opening the biddings, &c.

The practice in this respect is found to be variant in different states of the Union. Some of them have adopted the English practice and others have established rules of their own.

In this state, we have adopted the English practice with some modifications as to details. The practice, here, established by long usage in our courts of equity, has been to re-open biddings and order a re-sale whenever an advance bid has been offered of ten per cent. upon the amount bid at the sale, provided it is made before the confirmation of the sale and in apt time, which is at the term ensuing the sale, but never to re-open the biddings after confirmation except in cases of fraud, meaning fraud in its broadest sense. The rule laid down by Mr. Justice RODMAN in *Blue* v. *Blue,* 79 N. C., 69, is, we think, the correct rule, and is in accordance, so far as our information extends, with the uniform practice which has obtained in our courts in such cases. He says, " the practice in this state is to set aside a sale before confirmation, upon an offer of an advance of *ten per cent.* upon the price. That also is the English rule." S. P. In the matter of *Bost and others,* 3 Jones Eq., 482; *Wood* v. *Parker,* 63 N. C., 379.

In Daniel Ch. Pr., 1465, we find the English rule laid down, as follows: " When estates are sold before a master under the decree of a court of equity, the court considers itself to have greater power over the contract than it would have were the contract made between party and party; and as the chief aim of the court is to obtain as great a price for the estate as can possibly be got, it is in the habit, after the estate has been sold, of " *opening the biddings,*" that is, of allowing a person to offer a larger price than the estate was originally sold for, and, upon such offer being made, and a proportionate deposit paid in, of directing a re-sale of the property." And again, on page 1466 of the same book, it is said, " that the mere advance of price, if the report of the

purchaser being the last bidder is not absolutely confirmed, is sufficient to open the biddings, and that they may be opened more than once."

The purchasers insist there was error in receiving the advance bid of Arrington, who was present at the sale and bid for the property. It is true, that is an objection that has been sometimes entertained on the ground that it tends to prevent a proper competition, but the objection having been taken before LORD ELDON, in the case of *Tyndale* v. *Warre,* cited in Daniel, Ch. Pr., 1460, he held, although the court looks with jealousy upon the offer of such a person, yet the largeness of the bid offered will be taken as a compensation for a loss that may have arisen from a want of competition at the sale.

It is further contended that the receiver having reported that the property brought a fare price, the sale ought to be confirmed. But the receiver did not so report. He reported that he had been notified that an application to re-open the biddings for said property will be made at the present term of the court, but no application had been filed with him. However, should no such application be filed, he believed that, owing to certain claims to a portion thereof which have been asserted, and to the outlay of money which will be needed to put the canal property in good condition and suitable repair, the price for which it sold is as much as it will ever bring, and therefore in that event he recommended a confirmation of the sale.

The plain interpretation of the language of the report is, that the receiver will not recommend the confirmation of the sale if an advance bid should be offered, and that he recommends it only in the event it is not offered. That falls far short of reporting that the property brought its full value. And as to his belief that it was sold for as much as it would ever bring, it seems that he was mistaken.

The purchasers rely upon the remarks of Mr. Justice DIL-

LARD, in the case of *Pritchard* v. *Askew*, 80 N. C., 86, to the effect that as a matter of policy, the courts are slow to set aside a judicial sale, and are careful not to open the biddings unless there be some special circumstances, such as unfairness in the conduct of the sale, want of proper notice of the time and place of sale, fraud in the purchaser, and palpable inadequacy of price, and similar grounds. These remarks apply very oppositely to an application to re-open biddings after a confirmation of sale, and seem to have been general observations made by the learned judge upon the subject, without intending them to have any particular application to the case then under consideration, for in that case there was an advance bid of ten per cent. offered, unaccompanied by any one of the "special circumstances" enumerated, and yet the sale was ordered to be set aside and the biddings re-opened.

As biddings are merely opened for the benefit of those who have an interest in the property, this court in making its decision cannot take into consideration the purposes for which the property is purchased, nor whether the purchasers are residents or non-residents. As Judge Bennett remarked in his judgment, " it is a mere question of dollars and cents."

Before concluding the opinion we have deemed it proper to say that Mr. Justice RUFFIN, who is related to some of the appellants, and Chief Justice SMITH, who has been heretofore connected professionally with the subject of the action, felt a delicacy and reluctance to sit upon the hearing of this appeal, but were constrained to do so by the necessity of the case and a sense of public duty. Such was the course of Judge GASTON while on the bench in a case with which he had been connected as counsel.

We are of the opinion there was no error in the ruling of the court below. Let this be certified that the cause may be proceeded with.

No error.                                        Affirmed.