DAVID A. THOMPSON ET AL. v. JULIA A. ROSPIGLIOSI ET AL.

(Filed 12 February, 1913.)

1. Partition — Petition — Demurrer—Appeal from Clerk—Superior Court's Jurisdiction.

   An appeal by a guardian *ad litem* in proceedings for partitioning lands from an order of the clerk overruling his demurrer to the cause of action stated carries the entire case into the Superior Court, which, being a court of general jurisdiction in law and equity, is vested with full authority to proceed therewith.

2. Partition—Sales—Superior Courts—Discretion—Minors—Private Sale—Power of Court.

   The Superior Court may, in the exercise of its discretion, order a sale of lands in proceedings for partition, where minors

THOMPSON *v.* ROSPIGLIOSI.

are interested and represented by guardian *ad litem*, either to be publicly or privately made, and where no abuse of this discretion is shown on appeal, the action of the lower court will not be reviewed.

### 3. Same—Confirmation—Increased Bid—Interpretation of Statutes.

Revisal, sec. 2513, applies to public sales, and not to a sale decreed by the court of lands held in common, for the purpose of partition; it is therefore not required that the report of such sale remain on file ten days, or that the court wait twenty days before confirmation; but the matter of confirmation being in the sound legal discretion of the court, the court may confirm it at once, or at any time during the continuance of the term to which the report of sale is made; and this may be done notwithstanding there is an increased bid offered of 10 per cent subsequently to the confirmation of the sale, if in the exercise of this discretion it seems best to the court to do so in the interest of the parties, under existing conditions.

### 4. Same—Motions—Parties—Reasonable Discretion.

A commissioner to sell lands at private sale for partitioning the proceeds among tenants in common, received and recommended an unconditional bid of $130,000, and reported it to the court, where it was confirmed; one who was not a party, and represented as acting for another, made an offer of $145,000 for the property, provided its title was good, moved for a resale and to be made a party by reason of certain deeds to a part interest in the lands, which, it appeared, were procured by him, without consideration paid, for the purposes of his motion: *Held*, it having been found as a fact by the lower court that it was to the best interest of the real parties, who were not objecting, that the confirmation of the sale be not disturbed, its refusal to grant the motion and order a resale was not an abuse of the court's discretion.

### 5. Partition—Motion to Make Parties—Parties at Interest—Appeal and Error.

Upon the facts presented in this case, the Superior Court properly refused the motion of the petitioner to be made a party in proceedings to sell lands for partition, it appearing that he was not a real party at interest, and his only purpose being to set aside a sale confirmed by the court, satisfactory to those actually interested therein.

CLARK, C. J., dissenting.

APPEAL from *Justice, J.,* at July Special Term, 1912, of HENDERSON.

This proceeding was commenced on 22 April, 1912, before the Clerk of the Superior Court of Henderson County. It is alleged in the petition that the petitioners and the defendants are the owners in fee simple as tenants in common of a large body of lands, described in 77 grants issued by the State, and that within these boundaries there is a tract of 290 acres, described in paragraph 2 of the petition, and two tracts of 220 acres and 800 acres, respectively, described in paragraph 3 of the petition.

It is further alleged in the petition:

"(6) That, owing to the large number of parties interested, and the character, condition, and location of said property, actual partition thereof cannot be had without injury to all the parties interested, and the interests of all parties require a sale of said lands, and the interests of all will be enhanced by the sale thereof.

"(7) That the Appalachian Power Company, a corporation, has offered for the tract of land and water rights described in paragraph 2 of this petition the sum of $40,000 cash, and your petitioners are advised and believe, and so allege, that the said sum is a full and fair price for the same; that the said Appalachian Power Company is ready, able, and willing to pay the said price for the said land and water rights on the delivery to it of a deed conveying a good and sufficient title in fee simple therefor.

"(8) That the owners have a prospective purchaser for the tract of land and water rights described in paragraph 3 of the petition for approximately the sum of $90,000 cash, and your petitioners are advised and believe, and so allege, that the said sum is a full and fair price for the same."

And the petitioners pray judgment, among other things, as follows:

"(2) That, if upon investigation it shall be found by the court that the price offered by the said Appalachian Power Company for the lands and water rights described in paragraph 2 of the petition is a full and fair price, the court direct the said commissioners to sell the same to the said Appalachian

Power Company for said price at private sale and execute deed therefor to said·corporation upon payment of said purchase money.

"(3) That if upon investigation it shall be found by the court that the price offered by such prospective customer mentioned in paragraph 8 hereof for the lands and water rights described in paragraph 3 of this petition is a full and fair price, the court direct the said commissioners to sell the same to the said purchasers for said price at private sale, and to execute a deed therefor upon payment of the said purchase price.

"(4) That the other lands be sold either at public or private sale in such manner and at such time as the court may direct."

There are many defendants, all of whom are nonresidents, some being unknown, and some infants.

Process was served on the defendants by publication, which was complete on 23 May, 1912. Guardians *ad litem* were duly appointed for the parties unknown and for the infants. On 23 May, 1912, one of the guardians *ad litem* filed a demurrer to the petition, upon the ground that the clerk did not have jurisdiction of the matters therein alleged, and, upon the same being overruled, appealed, which appeal was heard at the July Special Term of said county of Henderson. The said term convened 29 July, 1912. Prior to the meeting of the said court, the attorneys practicing therein had. prepared a calendar, and the above entitled case was placed on said calendar for hearing on 6 August, 1912. On the published calendar it was noted that motions in all cases would be heard on the first day of the court. It was called to the attention of counsel for the plaintiffs in the case that the case had been inadvertently placed upon the civil-issue docket for the trial of jury cases, and thereupon counsel for the plaintiffs prior to the commencement of the court lodged notice that the said case would be called for hearing on the first day of said court; this being in accordance with the practice prevailing among the members of the bar of said county. On the first day of the court the demurrer which the guardian *ad litem* had filed to the jurisdiction of the clerk of the court, before whom the action was brought, was heard, and the same was overruled, and the court

thereupon appointed a separate guardian *ad litem* for the infant defendant, Charlotte T. B. Cram, and a separate guardian for the unknown defendants and those holding contingent interest, all of which will appear in the record. These orders were made on the first day of the court, and the guardians *ad litem* filed answers on the second day of the court.

On 30 July, 1912, the Appalachian Power Company made the following offer to Justice, who had been appointed commissioner to sell, which was reported to the court, with the recommendation that it be accepted:

"The Appalachian Power Company, a corporation, hereby makes an offer of forty thousand dollars ($40,000) in cash for the tract of land and water rights described in paragraph 2 of the petition. The said Appalachian Power Company also offers ninety thousand dollars ($90,000) for the land and water rights described in paragraph 3 of the petition, the same to be paid as follows: Fifteen thousand dollars ($15,000) cash and the balance to be paid in twelve (12) months, without interest, title to be retained by the commissioner until payment in full."

The guardians *ad litem* filed answers, admitting the allegations of the petition, and that the amounts offered by said power company were a fair value for the property. In addition to the personal knowledge which each of the guardians *ad litem* had of the value of the land and water rights and easements mentioned in the second and third paragraphs of the petition, there were at the time of filing these answers the affidavits of five persons conversant with said values, to the effect that the sums of $40,000 and $90,0000 were, respectively, full and fair value for the land, water rights, and easements set forth in the second and third paragraphs of the complaint, and the court found that the guardians *ad litem* were entirely justified in filing answers admitting that these sums were fair value for the same. The commissioner appointed to sell the lands was himself a resident of Henderson County, and familiar with the values of the property in question, and he reported to the court that the said offers were full and fair value for the same.

On the afternoon of Wednesday, 31 July, a motion was made by counsel for the plaintiffs that the bids of the Appalachian

Power Company be accepted, and the said motion was considered in open court, and upon considering the same and the recommendation of the commissioner, together with the affidavits as to the valuations, the court found that the said offers were full and fair value, and that it was for the best interest of all concerned that the said offers should be accepted. Before accepting the same, however, the court inquired if there was any objection on the part of any one to the acceptance of said bids, and there was no objection, and thereupon the court signed the order, as appears in the record, accepting said bids, and directing the commissioner to make title upon the payment of the purchase money in accordance with said bids. Attorneys for the plaintiffs demanded that the said Appalachian Power Company immediately pay the cash payments called for in said bids, and thereupon, in accordance with the said demand, the Appalachian Power Company did on the evening of 31 July give to the commissioner drafts or checks for the amount of the bids, which said drafts or checks were paid a day or two later, and the commissioner executed and delivered to the Appalachian Power Company a deed conveying to said corporation the lands, water rights, and easements described in the second paragraph of the petition, and gave also to the said Appalachian Power Company a receipt for $15,000 cash payment for the other land.

On 6 August, 1912, H. L. Borland, purporting to be the agent of Kuhn & Kuhn, made an offer in their behalf in open court to pay $145,000 for said property, which said offer was amended on 9 August, 1912, by offering $145,000 for a good title to said property. At the same time he made the offer to pay $145,000 for a good title to said property as the agent of Kuhn & Kuhn, the said Borland filed an application in his own behalf to have the decree confirming the sale to the power company set aside, and that he be made a party, alleging that he owned an interest in said lands. The claim of the said Borland to own an interest in said lands is based on three deeds, all of which were executed to him after said July special term began, one being of date 31 July, 1912, and the consideration therefor being $100, one of date 31 July, 1912, the consideration being $1 and other

valuable considerations, and one of date 1 August, 1912, and the consideration $1 and other good and valuable considerations. In opposition to the motion of the said Borland, the petitioners filed the affidavits of E. B. Goelet and S. J. Justice as follows:

E. B. Goelet, being duly sworn, says: That he is a notary public, residing at Saluda, in Polk County, and that on 1 August, 1912, he was called upon by some person, whose name he does not recollect, but who, he understood, resided in New York, to go to the residence of John and Martha Paris in Henderson County, to take the acknowledgment of certain papers, but, upon arriving, that the parties declined to sign the papers; that on the next day the same person requested him to go back to the same place, and that then the said John Paris and wife, Martha Paris, and Bessie Owens, their daughter, and her husband, Andrew Owens, all signed the paper and acknowledged it before him; that the paper was an instrument quitclaiming to one Borland all their rights in said lands in Henderson County bordering on the waters of Green River and Camp Creek; that the said parties who signed the deed stated that they had no papers to show any rights in the land, but thought they had some claim through Noah R. Paris; that all of them were illiterate people, and requested affiant to sign their names to said instrument while they held the pen; that the person at whose request he went out to take the acknowledgment stated that he desired the papers for use in the court in Hendersonville, then in session; that no money was paid at all, but an agreement was entered into to the effect that, if the paper was used, some $50 or $100 was to be paid, and in the event it was not used, nothing was to be paid; that affiant met the said Martha Paris in Saluda on yesterday morning, 9th inst., and she asked him if he had seen any of the parties, and stated that she had not yet received any money for the papers.

(Signed)  E. B. GOELET.

Sworn to and subscribed before me, this the 10th day of August, 1912.                    C. M. PACE, C. S. C.

THOMPSON *v.* ROSPIGLIOSI.

S. J. Justice, being duly sworn, says: That he is now, and has been for a number of years, the local agent representing the owners of what are known as the Speculation Company lands, in Henderson, Polk, and other counties, and that he has in his possession the documents and papers of said estate, extending over a long period of time; that these lands are the same ones mentioned in the complaint in this action, having been originally owned by Isaac Bronson and Goold Hoyt; that among the papers in his possession is a contract signed by William Redmond, Jr., and Francis M. Scott, surviving trustees, to N. R. Paris, dated 11 January, 1894; that the said N. R. Paris was a son of John and Martha Paris, as he is informed, and the said N. R. Paris is not dead; that the description in said contract is as follows: "All that piece of land in the counties of Polk and Henderson, North Carolina, about 50 acres, adjoining Joseph Guice and John Johnston, in patents 1024 and 250, on the waters of Green River"; that the said contract appears to have gone into the hands of John Paris, and was by him transferred to one Dalton; that he found in the papers a statement to the effect that if the said Dalton did not pay cash due on or before January, 1903, that he would surrender all rights, and that it appears that he did not pay the same, and that the original contract, unrecorded, was surrendered to the estate; that he is informed and believes that if John and Martha Paris and their children claim any rights in any lands owned by the Speculation Company, it is through this contract; that the lands described in the contract are too indefinite to be located, but there are still lands belonging to the estate and not embraced in the boundaries set forth in paragraphs 2 and 3 of the complaint, which would fill this description in a general way; that he is familiar with the lands described in paragraphs 2 and 3, and that there are no adverse claimants located upon this land, but that it is in the possession of the estate.            (Signed)   S. J. JUSTICE.

Sworn to and subscribed before me, this 10th day of August, 1912.                    C. M. PACE, C. S. C.

The interest of all parties in the land who are nonresidents, and are not personally represented, does not exceed 25 per. cent

of the whole. Upon the hearing of said motions of said Borland, in behalf of himself and Kuhn & Kuhn, counsel for plaintiffs requested the court not to set aside the sale to the Appalachian Power Company, for the reason that they considered the sale was fair and just, and that the best interests of their clients would be subserved by letting the sale stand. Counsel for the Appalachian Power Company stated to the court that the offer made by the power company would be withdrawn, unless the same was accepted at that term of the court.

After considering all these matters, it was determined by the court that, even if the court had power to set aside the sale to the Appalachian Power Company, it was for the best interests of all parties that the sale should not be set aside. After hearing the said motions, the court made and entered the two orders thereon which appear in the record, and to the denial of the said several motions, and each of them, the said J. A. and W. S. Kuhn and the said H. L. Borland excepted, in open court, and appealed to the Supreme Court.

*Martin, Rollins & Wright for appellants.*
*Tillett & Guthrie for appellee Appalachian Power Company.*

ALLEN, J. The appeal of the guardian *ad litem* from the order of the clerk overruling his demurrer carried the entire case into the Superior Court, and vested it with full jurisdiction of the cause, under Acts 1887, ch. 276, now Revisal, par. 614 (*Faison v. Williams,* 121 N. C., 152; *Roseman v. Roseman,* 127 N. C., 494; *Battis v. Pridgen,* 147 N. C., 134, and the Superior Court, being a court of general jurisdiction in law and equity, had the power to order and confirm a private as well as a public sale (*Rowland v. Thompson,* 73 N. C., 504; *Sutton v. Schonwald,* 86 N. C., 202; *Barcello v. Hapgood,* 118 N. C., 725; *McAfee v. Green,* 143 N. C., 418). In the *Rowland case, Pearson, C. J.,* says: "It is most usual for sales made by the order of a court of equity to be public sales, but the court, as the guardian of infants, has full power in regard to the mode of sale, and under special circumstances not only has power, but should, in the exercise of its discretion, authorize and confirm

what is called a private sale; that is, a sale without advertisement and public outcry. The question, Has a court of equity power to order the sale of the land of an infant to be made either at public or private sale? is not an open one. It is settled." This case was approved in *Sutton v. Schonwald, supra,* the Court saying, after citing it: "In which it was held that a court of equity, as the guardian of infants, had full power in its discretion to authorize or confirm a private sale of lands belonging to such a person." And in *Barcelo v. Hapgood, supra,* in which *Justice Avery* says: " 'It is usual,' said the Court in *Rowland v. Thompson,* 73 N. C., 504, 'for sales made by order of the court of equity to be public sales; but the court as the guardian of infants has full power in regard to the mode of sale, and under special circumstances not only has power, but should, in the exercise of its discretion, authorize and confirm what is called a private sale; that is, a sale without advertisement and public outcry.' " And he adds: "It is settled by a number of adjudications that The Code has not taken away from the Superior Court the jurisdiction heretofore exercised by courts of equity." In *McAfee v. Green, supra, Justice Connor,* referring to the same question, says: "To the exception that the sale is directed to be made privately it is sufficient to cite *Rowland v. Thompson,* 73 N. C., 504; *Barcello v. Hapgood,* 118 N. C., 712. The power of the court to order the sale to be made privately, when it appears to be promotive of the interests of the parties, has been too frequently adjudged by this Court to be considered an open question." The first three of these cases were decided when the statute was in force (Acts 1868-69, ch. 122, par. 15), now a part of section 2513 of the Revisal, which required the officer appointed to make sale to file his report of sale within ten days, and the last when the statutes were as they are now in that section of the Revisal, and in no one of them does it appear that the report of sale was required to remain on file ten days or that the court waited twenty days before confirmation. On the contrary, the inference is clear from the report of the *Thompson case* that the decree of confirmation was entered at the time the report of the commissioner was made, and in the *McAfee case,* decided under exist-

ing statutes, the offer to buy, the report of the commissioner, and the decree of confirmation were all at the same term of court, as the case before us.

We conclude, therefore, that the section of the Revisal referred to (section 2513) relates to public sales, and that it does not purport to interfere with the power of a court of equity to order and approve a private one.

We have, then, before us a proceeding properly instituted, process duly served, an offer to buy, which has been accepted and performed, a decree of confirmation of the sale, regularly entered by a court of competent jurisdiction, and a deed executed pursuant to the decree, and we are asked by one not a party to reverse the ruling of the judgment of the Superior Court refusing to set aside the decree, upon the ground of an advance bid of 10 per cent. There is authority for the position that after confirmation the biddings will never be reopened, except in case of fraud (*Attorney-General v. Navigation Co.,* 86 N. C., 412), but as the decree of confirmation and the motion to set aside were at the same term of court, and as orders and decrees are usually within the control of the court during the term, we will consider the question as if the motion to confirm and a motion to accept an advance bid of 10 per cent had been made at the same time. It is undoubtedly true that an offer to increase the bid 10 per cent is a sufficient reason for ordering a resale, and that it is usual to accept such an offer, and the refusal of the court to do so should be exercised with extreme caution and only after careful investigation; but the offer is addressed to the discretion of the court, which means, according to *Chief Justice Marshall,* when presiding at the trial of Aaron Burr, that it is addressed "not to the inclination of the court, but to its judgment, which is to be guided by sound legal principles." In *Trull v. Rice,* 92 N. C., 572, the proceeding was for a sale of land for partition. The land was sold under an order made in the cause, and a report filed recommending a confirmation of the sale. A party to the proceeding made an advance bid of 10 per cent, and a motion to confirm the sale and a motion for a resale were heard at the same time. The clerk refused to order a resale and confirmed the sale made,

and this ruling was affirmed by the judge and again upon appeal to the Supreme Court; the rule being then declared that: "It is a well settled rule of practice in this State, which has long prevailed, to regard an offer of an advance bid of not less than 10 per cent on the sum reported upon a sale by a commissioner acting under an order of the court, as a sufficient reason for refusing to confirm the sale, and directing a resale of the property, while, after confirmation, the biddings will not be reopened, except in case of fraud or unfairness or other adequate cause shown for reversing the order. *Attorney-General v. Navigation Co.,* 86 N. C., 408. But we have been referred to no cases in which, upon the mere ground of a proposal to increase the bid, and without regard to surrounding circumstances, this Court has undertaken in the exercise of an appellate jurisdiction in matters of law to compel the judge in the Superior Court to refuse the proposal of the reported bidder, and to direct a resale of the property."

This case has been approved on this point in *Uzzle v. Weil,* 151 N. C., 132; *Copping v. Manufacturing Co.,* 153 N. C., 330; and in *Tayloe v. Carrow,* 156 N. C., 8, the present *Chief Justice* saying in the first of those cases, which was a sale in foreclosure proceedings: "The brief of counsel for appellant is based on the ground that the court had the power to set aside the sale, and should have done so, upon the advance bid of 40 per cent. But conceding that, notwithstanding the increase in the value of land since 1895, it would have been just to the purchaser to now reopen the sale, the action of the court in refusing to do so is not reviewable. *Trull v. Rice,* 92 N. C., 572." And in the second, which was a proceeding in partition: "This action of the judge in setting aside the report and ordering a sale is not reviewable unless there is an error of law committed. In *Simmons v. Foscue,* 81 N. C., 86, the Court said: 'Of the force and effect of the evidence in inducing the exercise of that reasonable discretion reposed by law in the judge when called on to confirm the action of the commissioners, he alone must determine, and if no error in law was committed, we cannot reverse his decision.' This has been cited and approved. *Trull v. Rice,* 92 N. C., 572."

It follows, therefore, that his Honor exercised a discretion vested in him by the law when he refused to accept the advance bid, associated as it was with other unfavorable circumstances, and that his discretion is not reviewable unless there has been an abuse of it, and we find none. The wise, prudent, and impartial judge before whom the hearing was had, lives in an adjoining county, and knows more of the parties and of existent conditions, perhaps, than any other judge of the Superior or of the Supreme Court, and he finds, after full consideration, that it is best for those interested in the land to leave the decree of confirmation in force. No party to this proceeding objects to this finding, or excepts to his ruling, and 75 per cent or more of the interest in the property is represented personally, and the remainder by guardians *ad litem.* The person who does except is one Borland, who purports to be the agent of Kuhn & Kuhn, and no evidence of the agency was furnished except the affidavit of Borland. The offer which he filed as the agent of Kuhn & Kuhn on 5 August, 1912, was to pay $145,000 for the property, but he amended the offer on 9 August, 1912, by stipulating that the sum would be paid for a good title to the property, and at the same time filed an application in his own behalf to be made a party, claiming an interest in the lands under deeds procured by him for nominal consideration, after the commencement of the term of court at which the application was made. It appears, also, that one of these deeds was based on a contract of purchase, which had been surrendered; that no money was paid for it, and that Borland said he wanted the deed for use in court; and there is no suggestion that any of the grantors in the several deeds had ever claimed an interest in the land until approached by Borland. Kuhn & Kuhn have signed no offer, and the person who purports to be their agent comes into court holding in one hand an offer to buy if a good title can be made, and in the other a declaration that the court cannot give a good title, while the power company offers to take the property as it is. His Honor would have been justified, under these circumstances, in holding that there was not sufficient evidence of good faith, and that it was the part of wisdom to accept a fair price without litigation. We not only conclude

THOMPSON *v.* ROSPIGLIOSI.

that his Honor did not abuse his discretion, but think, on the facts appearing in this record, that he acted wisely in refusing to set aside the decree of confirmation.

The application of Borland to be made a party was properly denied upon the facts presented, and any rights he has are preserved in the order entered.

Affirmed.

CLARK, C. J., dissenting: This was a proceeding for partition of certain lands lying in Polk and Henderson counties, brought before the clerk of the latter county by David A. Thompson, trustee, Samuel J. Justice, administrator, and Willett Bronson, against Julia Ethel Rospigliosi and Prince Gian Batista Rospigliosi, her husband, and 250 or more other defendants, many of whom are alleged in the petition to be minors, and others are alleged to be unknown, and many are contingent remaindermen. None of the defendants were served with process except by publication, but guardians *ad litem* have been appointed for the unknown defendants and one or two of those who are known. It is alleged in the complaint that the Appalachian Power Company had made an offer of $40,000 for the land described in paragraph 2, and that there were prospective purchasers for the other land. The case was transferred to the Superior Court and docketed on the civil-issue calendar for 6 August, which calendar was advertised in the press. The court was a special term, and began on 29 July. No answer was filed for any of the defendants, except the formal answer of the guardians *ad litem,* filed on 30 July, 1912, admitting the allegations of the complaint. Thereupon, on that day, the lands were ordered to be sold, without stating whether at public or private sale. George W. Justice was appointed commissioner to sell the lands and George H. Valentine was appointed a referee to ascertain and report to the next term of the court the names of all parties interested in the lands and the extent of their interests. There is no suggestion in the complaint that a valuable water power was for sale nor any reference even to such power beyond the incidental expression, "land and water rights."

On the same day, 30 July, on which the order of sale was made the commissioner reported that the Appalachian Power Company had made an offer to buy the property described in section 3, as well as that in section 2.

An agreement had been made privately beforehand by one of the attorneys for the plaintiffs and the Appalachian Power Company, which was in substance that the said power company should become the owner of the property described in paragraph 3 of the petition at the price of $90,000, and if other persons should bid for the property at a price in excess of $90,000 the surplus over $90,000 should be paid to said power company; and a similar agreement was made at the price of $40,000 in regard to the property in paragraph 2 of the petition. On 30 July the court ordered the commissioner to sell the property to the Appalachian Power Company at those prices. Of said price $15,000 was paid down and the balance on twelve months credit without interest, title to be retained until payment in full.

On 5 August, 1912, the appellants Kuhn & Kuhn filed their petition in the cause, the court being still in session, alleging they had spent $15,000 relying upon the representations made by William Redmond Cross, one of the defendants, in investigating the condition of the property, and at the same time offered $145,000 cash for said property, $15,000 down and security for the payment of the other $130,000 in cash upon acceptance of their bid by the court. They alleged that they had been thrown off their guard and misled by the publication in the press that the case would be called on 6 August. At the same term of court, while it was in session, the appellant Borland filed a petition claiming an interest in the property ordered to be sold, asking that he be made a party to the action, offering proof of his interest, and joining in the petition that the order of sale be set aside and the property resold at public sale. On 9 August, the court still being in session, Kuhn & Kuhn filed an amended petition in the cause, asking that the order for sale should be set aside and the property resold at public sale, averring that means had been used to suppress bids for said property, and giving detailed information of declarations made by one of the plaintiffs and his attorney to that effect.

Thompson *v.* Rospigliosi.

They further stated that they would have made this offer of $145,000 for the property on 29 July if given an opportunity to bid, but were prevented by the advertisement by the court that the case would be called on 6 August. The petition of Borland to be made a party was denied, as was also the petition of himself and of Kuhn & Kuhn to set aside the sale and order resale at the advance bid.

The courts act as guardians and protectors of infants and unknown persons having interest in property in cases like this. It is always the duty of the court to see that the property is disposed of for the most it will bring. Revisal, 2513, provides that in partition "a report of the sale shall be made within ten days thereafter, and if no exception thereto be filed in twenty days the same shall be confirmed." This requirement of twenty days clearly is for the purpose of giving opportunity that the bid may be raised. There is no intimation in the statute of any distinction in this respect between private and public sales. But if there is any difference there is ten times more reason why there should be a delay given to raise the bid as to private sales than at public sales. In the latter case there has been some publicity, and the public has had at least an opportunity to bid, while in the former the transaction was made privately and there is much greater opportunity for fraud and collusion and, as in this case, the suppression of competing bids.

The bid here of Kuhn & Kuhn of $145,000 cash is nearly $20,000 over the bid of the Appalachian Power Company of $130,000, because the latter offered to pay only $15,000 cash and the balance on a credit of twelve months without interest. It is certainly to the interest of the vast mass of the parties in interest that the property should be put up at the advance price of $145,000. There are only three plaintiffs, but they assumed to do all the bargaining and entire control of the whole proceeding in total disregard of the rights of the 250 or more defendants.

It is suggested that if the bid is reopened at $145,000 the offer of the Appalachian Power Company of $130,000 may be lost. Not so; they are bound by their bid until the court reopens the bidding by accepting the offer of the advance bid of

Kuhn & Kuhn, which the court would not do until it has received the approved security which Kuhn & Kuhn offered for the payment of their bid in cash. When that is done, it will be open to the Appalachian Power Company or any one else to bid at the sale then ordered, and if a new bid is put in at such sale there will be twenty days in which to raise that bid by an advance of 10 per cent. This is the regular proceeding prescribed by the statute and the practice of the courts in sales for partition. If observed on this occasion, and the common report as to the nature of the property is correct, a sum greatly in excess even of the $145,000 offered by Kuhn & Kuhn will doubtless be obtained. The complaint does not set out the horse-power, and indeed does not mention even that there is any water power. The answer does not set it out, for there is none filed except the formal answer of the guardians *ad litem* admitting the allegations of the complaint. But there is reason to believe that on this property for which only $90,000 has been offered there are 70,000 horse-power that can be utilized by a power plant. At least the nature and extent of such power should appear in the complaint and in the evidence before the court, for if the price offered is inadequate, a court of equity should set aside a sale and order a new advertisement, even when there is no advance bid. A property of this kind should be advertised in the press and in the commercial centers outside of the State.

In *Dula v. Seagle,* 98 N. C., 458, 460, it is said: "It is well settled that an advance bid of 10 per cent is sufficient grounds for reopening the bidding when the performance of the offer was properly secured." In *Clement v. Ireland,* 129 N. C., 220, where there was a sale under foreclosure at the Spring Term, the court at Fall Term, upon motion, set aside the sale for irregularity, saying that it was contrary to the course of the court to confirm a sale without lapse of time between the day of the sale and its confirmation, that there might be opportunity to file exceptions and procure an increased bid, citing *White ex parte,* 82 N. C., 377; and further said that in analogy to the requirement of the statute in sales for partition, there

should be at least twenty days allowed for such purpose. In the present case the sale was made privately by an agreement between three of the parties in interest who figured as plaintiffs, without any consultation with the 250 or more defendants, and the sale was confirmed the same day without any opportunity to file exceptions or to raise the bid, and the motion to set aside such order and raise the bid was made at the same term of court while the judgment was still *in fieri.*

Under the settled practice of the Court and under the statute, Kuhn & Kuhn were entitled to an opportunity to raise the bid within twenty days, and the courts should have examined their offer of security, and, if the security was approved, should have reopened the bidding and ordered a resale at the advanced bidding. In not doing so, the court committed a grave error.

As Kuhn & Kuhn, or any one else, had the *right.* under the statute and according to the settled practice of the Court, to have the bidding reopened upon making an advance bid of 10 per cent, such bid gave them a status in the court which entitled them to appeal if their bid was arbitrarily refused. In *Attorney-General v. Navigation Co.,* 86 N. C., 408, after the sale was made an advance bid was offered and a resale ordered; thereupon the original bidders appealed. This Court entertained the appeal and affirmed the order of the judge reopening the bids. If that case was properly here on appeal, so is this.

"Any party aggrieved may appeal." Revisal, 585; 2 Cyc., 627, 637. In *Kneeland v. American L. and T. Co.,* 136 U. S., 93, it is said: "A bidder at a marshal's sale makes himself thereby so far a party to the proceeding that for some purposes he has a right of appeal," and on page 95 it is said: "A party bidding at a foreclosure sale makes himself thereby a party to the proceedings." In *Blossom v. R. R.,* 1 Wallace, 656, which was quoted and approved in the case last cited, it is said that "a *bidder* at a judicial sale has a right to appeal from the judgment of the court *refusing to accept his bid.* And such appeal will not be dismissed, but entitles such bidder to have the case considered and decided on its merits." *Blossom v. R. R.* was cited and approved on this point in *R. R. v. Souter,*

5 Wallace, 662; *Butterfield v. Usher,* 91 U. S., 248; *Hinkley v. R. R.,* 94 U. S., 468; *Williams v. Morgan,* 111 U. S., 698, and in many other cases.

It is true, the court will not open the bids after the confirmation except in cases of fraud. But that means when the confirmation is made in regular course after the twenty days required by the statute to give opportunity to file exceptions or raise the bid. It does not mean that the court will not set aside the decree of confirmation when it was entered irregularly and contrary to the custom of the court and the statute, without such delay and without opportunity to raise the bid. A motion to set aside such irregular judgment, as we have seen, was made in *Clement v. Ireland,* 129 N. C., 220, at the next term of the court, and allowed. Here it was made at the same term of the court. The practice in our courts to set aside a sale upon an offer of an advance of 10 per cent upon the price is well settled. *Blue v. Blue,* 79 N. C., 69; *In re Bost,* 56 N. C., 482; *Wood v. Parker,* 63 N. C., 379; *Vass v. Arrington,* 89 N. C., 13. In Daniel Ch. Pr., 1465, the rule is laid down that when property is sold under a judicial decree "the court considers itself to have greater power over the contract than it would have were the contract made between party and party, and as the chief aim of the court is to obtain as great a price for the estate as could possibly be got, it is in the habit, after the estate has been sold, of 'opening the biddings,' that is, of allowing a person to offer a larger price than the estate was originally sold for, and, upon such offer being made, and proportionate deposit being paid in, of directing a resale of the property."

The sale in this case was conducted in a most peculiar manner. It was made secretly, without publicity and several days ahead of the time that according to the published calendar the case was to be called for an order of sale to be made. It was sold according to terms previously agreed upon privately between the three plaintiffs and the purchaser, which in its terms was a most remarkable contract and in total disregard of the rights or wishes of more than 250 defendants, none of whom have been served with process or were represented by counsel.

A motion was made at that very term of court, while the judgment was *in fieri,* to set it aside and for a public sale upon an advance bid of more than $20,000. It was an error not to consider the advance bid and not to reopen the bidding if the advance offer was found to be properly secured. The bidders, Kuhn & Kuhn, are owners of large property in the immediate neighborhood of this.

Not only was there error and irregularity in failing to keep the report of the sale open for twenty days, as required by the statute, but there was further irregularity in this: The statute, Revisal, 2514, requires, for sales of land in partition, that "such sale shall be made *after the same notice* as required by law for sales of real estate by sheriffs under execution." Here there was a private sale, without notice to any one, and at least $20,000 under the price that a solvent party was ready and willing and able to pay. Certainly the Court ought not to hold that proceedings to sell land for partition are valid and regular when only the three plaintiffs and the guardians *ad litem* for only one defendant and for unknown persons who may be interested in the property were represented, and when, too, the sale has been made privately without the notice required by the statute, without the twenty days delay between the sale and confirmation which is required by the statute, and in the face of an advance bid of nearly $20,000, by parties owning large property in the vicinity and therefore known to be *bona fide* bidders.

It was error also to refuse to make Borland a party, who showed deeds which entitled him to an interest in the said property. *Jones v. Asheville,* 116 N. C., 817. On the refusal of his application to be made a party, he had the right to appeal. *Rollins v. Rollins,* 76 N. C., 264; *Keathly v. Branch,* 84 N. C., 202. Borland as well as Kuhn & Kuhn appealed from the refusal to consider the advance bid.

A proceeding in violation of the express requirement of the statute, both as to giving notice of the sale and in failure to leave open the report of the sale for twenty days, cannot be sustained. The judgment was irregular on these accounts, and should be set aside. The court of equity, having due regard to the interests of the numerous defendants, none of whom were

served with process or were represented by counsel, should upon motion, made at the same term, have ordered the sale to be reopened. To affirm such proceedings as occurred in this case would leave wide open the door to collusion and fraud between the plaintiffs in such cases and a favored purchaser. The evidence herein of suppressing competition is plenary.

The judgment should be set aside. The court below should consider the bid of Kuhn & Kuhn, and, if it is found to be properly secured, direct a resale upon the notice given by the statute and with opportunity after that sale of twenty days in which to file exceptions. The requirements of the statute should not only be observed, but the courts should use diligence to prevent all opportunity of collusion or of imposition in judicial sales. The value of the property should be inquired into more fully before any sale is finally confirmed. Water power of the estimated extent of 70,000 horse-power is doubtless worth vastly more than even the advanced bid of Kuhn & Kuhn. The courts should always see that there is a fair sale without suppression of bidding, and order another sale even then, unless a fair price for the property, after full investigation of its value by the court, has been offered. Such property as this is rare, and a good price can be had if fair and full opportunity is given to bidders. This has not been done in this case.