IN THE MATTER OF THE ADMINISTRATION OF THE ESTATE OF J. W. BROWN, DECEASED.

(Filed 2 May, 1923.)

1. **Sales—Executor and Administrator—Private Sales—Clerks—Appeal—Superior Court—Discretion of Court—Public Sales.**

   Where the administratrix, the wife of the deceased, has petitioned the clerk of the court for a confirmation of a private sale of a restaurant belonging to the estate, to her two sons at a certain price, and others of the heirs at law object thereto on the ground that the restaurant was worth more than the price proposed, one of them offering more money therefor, and standing able, ready, and willing to pay the advanced price,

and contending that it would bring more at a public sale: *Held*, on appeal from the order of the clerk to the Superior Court, the entire matter was before the Superior Court judge, and he was authorized, upon sufficient affidavits or verified pleadings, to make such orders therein as would tend to make the restaurant bring its full value.

**2. Appeal and Error — Courts — Orders—Judgments—Sales—Executors and Administrators—Presumptions.**

On appeal to the Supreme Court from an order of the judge denying the petitioner's prayer for the confirmation of a private sale, as administratrix of her husband's estate, she had agreed to make to her two sons, under the objection of others of the heirs at law, the presumption is, nothing else appearing, that there was sufficient evidence before the judge to sustain his findings of fact upon which he had based his order; and in this case, *held*, there was evidence of record appearing from the verified pleadings and affidavits of respondent, sufficient to sustain his order that the property be advertised and sold at public outcry.

**3. Same—Statutes.**

The provisions of C. S., 69, allowing the personal representative in certain cases, upon application to the clerk and obtaining his order therefor, to expose certain personal property therein specified at private sale for the best obtainable price, and report the sale for confirmation, does not take away from the clerk, or judge on appeal, the sound discretionary powers of determining whether a public or private sale would best subserve the interest of the parties, or to authorize a private sale when in the discretion of the clerk or judge, as the case may be, it was to their best interest.

**4. Judgments—Orders—Courts—Irrelevant Remarks.**

An incidental and irrelevant statement made by the judge in ordering personal property of an estate in his sound discretion, to be sold at public auction, cannot affect the validity of his order.

APPEAL by administratrix from order of *Ray, J.,* 16 September, 1922, from MECKLENBURG.

J. W. Brown died intestate in Charlotte in July, 1921, leaving a restaurant and hotel business, known as Brown's Restaurant and Hotel, together with other property, and his widow, Eunice J. Brown, qualified as administratrix of the estate on 8 August, 1921, and has been conducting the restaurant through her two sons, E. H. and H. F. Brown, since that time. J. W. Brown left surviving him five sons, two daughters, and a widow, two of which sons were minors, and both of the daughters were married.

On 3 January, 1922, the widow and the five sons, including the two minors, and the two interested parties, E. H. and H. F. Brown, signed an agreement to sell privately to E. H. and H. F. Brown all of the property and assets known as Brown's Restaurant for a price of $16,000. This proposed sale was not assented to by either of the two daughters, their answer and the objections to the sale being set out in the record,

wherein they aver that the price is not a fair and reasonable price for the business, and that they verily believe that a greater price could be obtained. They offer as proof of the truth of this contention on their part the fact that when the clerk of the court announced his willingness to receive bids for the property it was advanced to above $21,000 by Mrs. Devereux, one of the daughters and one of the protestants and respondents.

Attention is called to the fact, however, that when the two named purchasers, Herman F. and Ernest H. Brown, and the two minors are eliminated, there leaves only the widow, whose mind, it is alleged by Mrs. Devereux, is completely dominated by Herman F. and Ernest H. Brown, and one other brother, Isham A. Brown, as consenting to the said sale.

The entire history of the transaction as set forth in the papers is urged by the respondent as sufficient justification for the finding by Judge Ray that "It is to the best interest of the estate that the said property be sold publicly after due advertisement." Judge Ray then ordered a public sale of the property to the highest bidder, after advertisement, and report of the sale to the court, as the best interest of the parties would thereby be subserved. The administratrix appealed.

*Clarkson, Taliaferro & Clarkson for administratrix.*
*J. F. Flowers for petitioner.*

Walker, J., after stating the case: The entire matter was before the judge by the appeal, and his findings will be presumed to be based upon the evidence considered by him. We do not understand that the administratrix, the appellant in this case, contends that there was no evidence upon which the judge could base such a finding, and, as we understand, there is no exception taken to the finding upon the ground that there is no evidence to sustain it, but if so, it is not tenable. It will hardly be denied that, by the appeal of the respondent, Mrs. Devereux, from the clerk, the entire case was constituted before the judge, and he could "determine all matters in controversy," and make all necessary and proper orders and decrees thereon. C. S., 637.

Of course the court would order that this property be sold in such a way that it would bring the most money, and Judge Ray was certainly justified in finding that it is to the best interest of the estate to sell the property publicly when the offer of $20,210 had been made, and, as the person making that bid was ready and willing to pay the price, or secure the same, the estate could not possibly be harmed by the order requiring the property to be sold at public auction, for the reason that the amount offered and bid for it would certainly be obtained, and the judge was

IN RE BROWN.

evidently convinced by proof before him that a great deal more would be received if the sale was public.

The petition of Mrs. Mable Brown Devereux, which appears in the record, states:

1. That this affiant made several bids for the property described, as appears from the record herein, and she was then and is now willing to pay more than the sum offered by the said E. H. and H. F. Brown, and, independently of herself as a prospective purchaser, she is informed and believes that the property is worth very much more than the price offered by E. H. and H. F. Brown, and that, if sold publicly, it will bring a fair price, and one much higher than had been offered by E. H. and H. F. Brown.

2. That she is convinced a much higher price could be obtained if the property is sold publicly, and she also alleges that the object of the administratrix in undertaking to suppress a public sale and thereby to avoid publicity is prompted by a desire to sell the property to her two sons, and, if necessary, for much less than its real value.

The allegation of Mrs. Devereux is not denied, but if so, there is enough evidence in support of it to justify the disposition of the case by Judge Ray, which will hereinafter more fully appear. In January, 1922, the administratrix urged the clerk to authorize a consummation of the proposed sale to her two sons at the price of $16,000. When she was not permitted to do so, the price was advanced by them, without advertisement, and without the public generally knowing that this valuable property was for sale, until more than $20,000 had been offered by Mrs. Devereux, who was ready, able, and willing to purchase the property, and she alleged that other persons were ready, able, and willing to purchase the same, and she believed that a much higher price could be had for the property if it were advertised, and if the public generally, and persons interested in business of this kind, were notified that the same was for sale, than if the sale were to be conducted in secret, or without letting the public know of it. This allegation does not seem to be categorically or, at least, sufficiently denied. With all of the parties and the evidence and record before the court, Judge Ray took this view of the matter and found that, even in view of the offer of E. H. and H. F. Brown of $20,210, to which they had increased the bid for the property, it was to the best interest of the estate and the parties that the property be sold publicly.

The allegations in the petition and answer of Mrs. Devereux, set out in the record, have not been denied, or sufficiently so, and, being duly verified, support the findings of Judge Ray that the best interests of the estate demand a public sale. There is additional evidence in the record,

however, that tends to sustain the contention of Mrs. Devereux and the finding of Judge Ray.

In 1919 the Legislature passed an act (Public Laws 1919, ch. 66), which is now C. S., 69, which allows the personal representative in certain cases, upon application to the clerk of the Superior Court, and obtaining an order therefor, to expose certain personal property therein specified at private sale for the best price that can be obtained, and to report the sale, when made by him, to the clerk for confirmation, and permitting an increase in the bids for the same.

It would seem that this statute was only permissive in character, and not mandatory upon the clerk or the judge having jurisdiction of the cause. It could scarcely have been the intention of the Legislature to take away the sound discretion of the clerk, or judge, in determining whether a public or a private sale would best subserve the interests of the several parties, but the intention and main purpose of the act were to authorize a private sale when it was found to be best. It was said by the Court (through *Judge Daniel*), in regard to what is now C. S., 68, as to the sale of "personal estate" at public vendue: "The executor or administrator might, before the passage of the act, have sold bona fide the goods and chattels of the testator or intestate. The legal title was in him, and an honest purchaser from him would always have acquired a good title. The common law on this subject is not repealed by this act. The statute is only directory, which, however, it would be well always to follow, for if the executor or administrator fails to obtain as much at private sale as would have been got at public vendue, he or they would be bound to make good the deficiency out of their own pockets." *Wynns v. Alexander,* 22 N. C., 59, citing *Cannon v. Jenkins,* 16 N. C. (1 Dev. Eq.), 427. We would not be warranted in holding that so radical a change in the law, as contended, was contemplated by the act of 1919, ch. 66.

As the judge had acquired a general jurisdiction of the case by the appeal, it must follow that he had the power to modify, or even to reverse, the ruling of the clerk and order a public sale of the property.

The mere incidental statement of the judge in making his ruling that a leasehold was real estate was a clear inadvertence on his part—a palpable slip of the tongue, which does not affect the merits of the controversy. We therefore pass it by as not requiring any further consideration from us.

What we have said is all that is necessary to decide the case, and we forbear any further discussion of it.

The judge was in the rightful exercise of his jurisdiction when he made the order for a public sale, there being plenty of evidence to support it.

The object of the law is to obtain the highest and best price, and that is its chief concern. *Justice Ashe,* in *Attorney-General v. Navigation Co.,* 86 N. C., at p. 412, citing and quoting from Daniel on Ch. Pr., 1465, says: "We find the English rule laid down as follows: 'When estates are sold before a master under the decree of a court of equity, the court considers itself to have greater power over the contract than it would have were the contract made between party and party; and as the chief aim of the court is to obtain as great a price for the estate as can possibly be got, it is in the habit, after the estate has been sold, of "opening the biddings," that is, of allowing a person to offer a larger price than the estate was originally sold for, and, upon such offer being made, and a proportionate deposit paid in, of directing a resale of the property.' And again, on page 1466 of the same book (Daniel, Ch. Pr.), it is said: 'That the mere advance of price, if the report of the purchaser being the last bidder is not absolutely confirmed, is sufficient to open the biddings, and that they may be opened more than once.'" And he adopts what was said by *Justice Rodman* in *Blue v. Blue,* 79 N. C., 69, as follows: "We think the correct rule is in accordance, so far as our information extends, with the uniform practice which has obtained in our courts in such cases. *Judge Rodman* says 'the practice in this State is to set aside a sale before confirmation, upon an offer of an advance of 10 per cent upon the price. That, also, is the English rule,'" citing *Ex parte Bost,* 56 N. C., 482; *Wood v. Parker,* 63 N. C., 379.

The cause was ably and learnedly argued here by Mr. Taliaferro for the respondent, but we think that we have correctly stated the controlling principle of the law.

Affirmed.